988 F.2d 121
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James E. PENNINGTON, Plaintiff-Appellant,
v.
Charles RYAN, Warden, AZ Prison Complex-Winslow; et al.,
Defendants-Appellees.
 No. 92-15699.
 United States Court of Appeals, Ninth Circuit.
 Submitted Feb. 11, 1993.*
Decided Feb. 22, 1993.
 
 Appeal from the United States District Court for the District of Arizona, No. CV-91-00147-EHC; Earl H. Carroll, District Judge, Presiding.
 D.Ariz.
 AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
 Before GOODWIN, SCHROEDER and CANBY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 James E. Pennington, an Arizona state prisoner, appeals pro se the district court's summary judgment in favor of defendants in his 42 U.S.C. § 1983 action.[1] Pennington, who is African-American, contends that (1) defendants were deliberately indifferent to his serious medical needs by drawing pictures of a swastika and iron cross on his medication packages; and (2) defendants discriminated against him on the basis of race. We have jurisdiction pursuant to 28 U.S.C. § 1291. We review de novo, see McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), and affirm in part and reverse and remand in part.
 
 
 3
 * Deliberate Indifference
 
 
 4
 Prison officials violate a prisoner's eighth amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 104-06 (1976); McGuckin, 974 F.2d at 1059. "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." McGuckin, 974 F.2d at 1059 (quotation omitted). The indifference must be substantial; inadequate treatment due to negligence or inadvertence, see Estelle, 429 U.S. at 105-06, and differences of opinion between inmate and prison medical officials, see Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989), do not constitute deliberate indifference.
 
 
 5
 Pennington has been diagnosed with hypertension and takes medication on a daily basis. On August 3, 1990, he was placed in isolation lockup pending a disciplinary hearing. Defendant Corrections Officer Shrader packed Pennington's belongings, including two packages of Pennington's hypertension medication, and took them to the isolation lockup. Before giving Pennington's belongings to the isolation lockup guard, Shrader drew a picture of a swastika on one package of medicine and an iron cross on the other. The isolation lockup guard, defendant Corrections Officer McConnell, delivered the packages to Pennington.
 
 
 6
 Upon receiving the packages, Pennington asked who drew the symbols. McConnell replied, a "tall, blond officer ...," in reference to Shrader. Pennington then requested that his medication be examined because he believed someone had opened the packages and tampered with the medicine. He also filed a grievance against Shrader.
 
 
 7
 On August 6, 1990, the prison pharmacist, defendant Witmer, examined Pennington's medication and determined it was properly labeled. He nevertheless issued a new two-day supply in a new container. Pennington apparently refused to take the medication and instead waited until he received his regular weekly prescription on August 8, 1990. On October 3, 1990, defendant Shrader was suspended without pay for 24 hours as a result of the investigation of Pennington's grievance.
 
 
 8
 Pennington subsequently initiated this action, naming as defendants Warden Charles Ryan, Deputy Warden George Herman, Correctional Programs Supervisor Jack Schwartz, Nursing Supervisor Judy Brooks, Witmer, Shrader, and McConnell.
 
 
 9
 Pennington alleged in his complaint that Ryan, Schwartz, and Herman authorized his lockup in isolation. He further alleged that Ryan told him that Shrader drew the racist symbols on Pennington's medication. In his response to defendants' motion to dismiss, Pennington alleged that (1) he was placed in isolation for remarking that the state prison in Winslow, Arizona is a racist institution; (2) the defendants knew of his medical condition; (3) Herman lied when he stated in his affidavit that Pennington and Shrader had a "joking" relationship; and (4) defendants failed in their responsibility to ensure that prison employees followed the rules and policies of the Arizona Department of Corrections.
 
 
 10
 These allegations do not show that either Ryan, Schwartz, or Herman personally participated in or directed the conduct giving rise to this action; nor do these allegations show that any of these defendants knew of this conduct and failed to act to prevent it. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.1989) (section 1983 liability arises only upon showing of personal participation; supervisor liable for conduct of subordinates only if supervisor participated in or directed violation or if supervisor knew of violation and failed to act to prevent violation). Ryan learned that Shrader drew the pictures on Pennington's medication packages only because of the investigation into Pennington's grievance. Liability under section 1983 cannot be predicated on the theory of respondeat superior. See id. Therefore, the district court correctly granted summary judgment in favor of Ryan, Schwartz, and Herman.
 
 
 11
 The only allegation against Brooks was that she failed to ensure the safe delivery of Pennington's medication. Pennington failed to allege Brooks personally participated in, directed, or knew of and failed to prevent the offensive conduct. Therefore, the district court correctly granted summary judgment for Brooks. See id.
 
 
 12
 Pennington alleged that Witmer (1) failed to ensure that Pennington's medication was properly dispensed, and (2) inspected only the labels on Pennington's medication even though Pennington was concerned that someone had tampered with the medication.
 
 
 13
 Pennington failed to allege Witmer was directly involved in delivering Pennington's medication. Thus, Pennington's first allegation does not support a claim against Witmer because it again raises the theory of respondeat superior. See id.
 
 
 14
 Furthermore, nothing in the record supports Pennington's allegation that Witmer only inspected the labels and failed to inspect the medication for evidence of tampering. Witmer specifically stated in his affidavit that he "inspected [Pennington's] medication, and found them to be correctly labeled" (emphasis added). Finally, there is no dispute that following the inspection Witmer issued a new supply of medication to Pennington. Accordingly, the district court did not err by granting summary judgment in favor of Witmer.
 
 
 15
 There is no dispute that Shrader drew the racist symbols on Pennington's medication packages and that McConnell delivered the defaced packages to him. In his response to defendants' motion to dismiss, Pennington alleged he was afraid to take his medicine because of the racist symbols. Thus, there is no question that Shrader and McConnell interfered with Pennington's medical treatment. Their conduct caused Pennington to be apprehensive about taking his medication. The fact that Pennington did not suffer serious effects as a result of not taking his medication does not preclude a finding that Shrader and McConnell are liable. See McGuckin, 974 F.2d at 1061.
 
 
 16
 The district court found that the actions of Shrader and McConnell amounted to no more than negligence because Pennington had failed to allege facts showing that they acted with the knowledge that their conduct might endanger Pennington's health. Therefore, the court reasoned, because negligence is not a basis for liability under section 1983, see Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir.), cert. denied, 113 S.Ct. 599 and 113 S.Ct. 600 (1992), summary judgment was proper. We disagree.
 
 
 17
 The liability of Shrader and McConnell turns on their intent and knowledge. Defendants contended throughout the proceedings below that Shrader intended the drawings as a joke and that Pennington and Shrader often engaged in racial jokes. Defendants also claimed that Pennington admitted he would not have filed this action had he known it was Shrader who drew the racist pictures. The record, however, contains no support for these contentions other than the statements in Herman's affidavit. Moreover, Pennington disputes these contentions. He attached to his response to the motion to dismiss an exhibit showing that Shrader has brought disciplinary charges against him in the past.
 
 
 18
 Summary judgment generally is inappropriate when an issue of intent or knowledge is involved. See Tzung v. State Farm Fire & Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989); Suydam v. Reed Stenhouse of Washington, Inc., 820 F.2d 1506, 1509 (9th Cir.1987). On the record before us, the evidence regarding (1) Shrader's and McConnell's intent in drawing racist symbols on Pennington's medication packages and delivering the packages to him, and (2) their knowledge of the effect of their conduct on Pennington's medical condition is sufficiently controverted that the district court erred by granting summary judgment for them on the claim of deliberate indifference. We therefore reverse the court's summary judgment as to these defendants and remand for further proceedings.
 
 II
 Racial Discrimination
 
 19
 Pennington also contends that defendants are liable for racial harassment. Again, Pennington's allegations do not show any personal involvement in or knowledge of the conduct giving rise to this action on the part of defendants Ryan, Schwartz, Herman, Brooks, and Witmer. See Taylor, 880 F.2d at 1045. We therefore affirm the district court's summary judgment as to these defendants on this claim.
 
 
 20
 As to defendants Shrader and McConnell, however, genuine issues regarding their intent and knowledge again make summary judgment inappropriate. See Tzung, 873 F.2d at 1339-40; Suydam, 820 F.2d at 1509. We therefore reverse the court's summary judgment as to these defendants and remand for further proceedings.
 
 
 21
 AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4. Accordingly, we deny appellant's request for oral argument
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Defendants actually filed a motion to dismiss Pennington's action. The magistrate treated the motion as one for summary judgment, however, because defendants referred to matters outside the pleadings. The parties were properly notified of the magistrate's intention. See Fed.R.Civ.P. 12(b)