Kevin **SUYDAM** and Brock Williamson, Plaintiffs-Appellants,

v.

**REED STENHOUSE OF WASHINGTON, INC.,** a Washington corporation; **Reed Stenhouse, Ltd.,** a Canadian corporation; **Reed Stenhouse Marketing of London,** a British corporation; and **Dennis Edward Jennings,** Defendants-Appellees.

No. 86–3885.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1987.

Decided July 6, 1987.

Before BROWNING, Chief Judge, WRIGHT and HALL, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Appellant Brock Williamson ("Williamson") was injured while working on a vessel owned by Kevin Suydam ("Suydam"). After settling with Suydam, Williamson sued several excess underwriters to recover under Suydam's Protection and Indemnity insurance policy. The district court granted summary judgment in favor of the excess underwriters. Williamson appeals.

The district court had jurisdiction over the action pursuant to its admiralty jurisdiction. *Wilburn Boat Co. v. Fireman's Fund Insurance Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955). This court has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291. We reverse and remand.

## I.

Suydam, a commercial fisherman, purchased a vessel from a boat building firm in 1981. He elected to finish work on the vessel himself. On March 25, 1981, Suydam purchased a ninety-day Builder's Risk insurance policy through Reed Stenhouse ("Reed") to cover the work. Initially, the work took place in the boatyards at Marysville, Washington. Later, Suydam sailed the vessel to Seattle, where work continued.

On June 25, 1981, Suydam returned to Reed to renew his policy. Instead of buying another Builder's Risk insurance policy, Suydam purchased a Protection and Indemnity policy. The policy contained a warranty which required that the vessel be "operated and maintained in the commercial fishing industry." Oceanus Mutual[1] was the primary underwriter, and several Lloyd's

Arnold J. Barer, Seattle, Wash., for plaintiffs-appellants.

Forrest Booth, San Francisco, Cal., for defendants-appellees.

---

1. Oceanus is bankrupt and is not a party to this action.

underwriters were the excess underwriters.[2]

The parties vigorously dispute the status of the vessel on June 25, 1981. Suydam claims that the vessel was nearly complete and was merely being "outfitted." Jennings, on the other hand, claims that the vessel was "under construction" and, hence, was not being "operated and maintained in the commercial fishing industry." The parties also dispute what Suydam told Reed at the time he purchased the Protection and Indemnity policy.

On July 2, 1981, Williamson, a welder hired by Suydam to finish off the vessel, was severely burned in an accident while working on the boat. He sued Suydam to recover damages. Eventually, Williamson settled his lawsuit with Suydam; in exchange, Suydam assigned his rights under the Protection and Indemnity policy to Williamson. Williamson then sued Jennings to recover under the policy. The district court entered summary judgment in favor of Jennings, finding that the policy at issue did not cover Suydam's vessel since it was under construction at the time of the accident. The court affirmed this order in a subsequent order denying reconsideration. Williamson appeals.

## II.

■ We review the district court's order granting summary judgment de novo. *Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 730 (9th Cir.1986). On appeal the relevant inquiry is "whether there is any genuine issue of material fact, and whether the substantive law has been applied correctly." *Id.* In the absence of a federal statute, a judicially fashioned admiralty rule, or a need for uniformity in admiralty practice, we look to state law, in this case Washington law, in determining the consequences of a breach of warranty in a marine insurance policy. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 321, 75 S.Ct. 368, 374, 99 L.Ed.

337 (1955); *Bohemia, Inc. v. Home Insurance Co.,* 725 F.2d 506, 510 (9th Cir.1984).

## III.

Jennings argues the parties' misunderstanding as to the nature of the risk precluded mutual assent to the contract and, therefore, that summary judgment was appropriate. The district court did not rule on this basis. Nonetheless, we may affirm on any ground finding support in the record. *Smith v. Block,* 784 F.2d 993, 996 n. 4 (9th Cir.1986).

■ Where there is no element of estoppel, a meeting of the minds is required to make a contract. *Auve v. Wenzlaff,* 162 Wash. 368, 373, 298 P. 686, 688 (1931); *Swanson v. Holmquist,* 13 Wash.App. 939, 942, 539 P.2d 104, 106 (1975). Summary judgment is inappropriate on this issue. First, there is a material issue of fact regarding whether Jennings understood the nature of the risk. Williamson argues that Jennings had constructive knowledge of the risk through his agent, Reed. *See* Part V below. Second, there is a material issue of fact regarding estoppel. Jennings' failure to take prompt action to deny coverage may estop him from denying the existence of a contract. *See* Part VI below. At a minimum, Jennings' inaction is evidence that he believed the policy covered Suydam's vessel and, hence, that there was mutual assent to the insurance contract.

## IV.

Jennings next argues that Williamson cannot recover because Suydam breached an express warranty in the policy that the vessel would be operated and maintained in the commercial fishing industry. The district court agreed and granted summary judgment in favor of Jennings on this basis.

■ The question of whether a given sentence in a marine insurance policy is to be given the effect of a warranty depends upon the intention of the parties. G. Gil-

**2.** Dennis E. Jennings was one of the excess underwriters. This opinion will refer to the excess underwriters collectively as "Jennings."

more & C. Black, *The Law of Admiralty* § 2–7, p. 67 (2d ed. 1975). In *Stender v. Twin City Foods, Inc.,* 82 Wash.2d 250, 510 P.2d 221 (1973), the Washington Supreme Court addressed the question of intent in contract law. According to the court:

> Determination of the intent of the contracting parties is to be accomplished by viewing the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.

82 Wash.2d at 254, 510 P.2d at 224.

Applying the analysis set forth in *Stender,* it is evident that summary judgment is inappropriate on the intent issue. Jennings' failure to take prompt action to deny coverage suggests that the parties intended the policy to cover Suydam's boat. *See* Part VI below. Moreover, Reed submitted a declaration which suggests that Williamson's interpretation of the insurance policy is reasonable. According to James D. Livingstone, an experienced employee in the marine insurance business:

> [T]here is no clear or sharp line delineating when a vessel should go off a builder's risk cover and commence operating coverage. This is particularly so in the somewhat unusual case of the LADY ALASKA where the owner took delivery of the vessel from the original builder, then navigated the vessel to Lake Union and undertook completion of construction and/or outfitting himself.... [I]t is not possible to determine that an insured breached a warranty that the vessel will be operated and maintained in the commercial fishing industry or that a vessel is not covered by the terms of an operating policy simply by the fact that welding and carpentry work were being done on the vessel. An operating policy would cover this type of activity if the work being done is outfitting the vessel or preparing to engage in a particular type of fishery.

In cases such as this one, where the primary issue is one of intent, summary judgment is generally inappropriate. *SEC v. Seaboard Corp.,* 677 F.2d 1297, 1298 (9th Cir.1982).

## V.

Even assuming that a breach of warranty occurred, there are other issues of material fact which preclude summary judgment in this case. Williamson argues that Jennings waived the right to object to any breach of warranty. His argument proceeds as follows: Reed knew that the vessel was not completed before it issued the insurance policy. Since Reed was acting as the agent of Jennings, Jennings had constructive knowledge that the vessel was not completed. Because Jennings knew that the vessel was not being "operated and maintained in the commercial fishing industry" before the insurance policy was issued, he cannot object to the breach of warranty by Suydam. *See Fox v. Bankers Life & Casualty Co.,* 61 Wash.2d 636, 638, 379 P.2d 724, 726 (1963) ("a warranty clause in a policy of insurance will not be held breached for a cause known to the agent before the application was signed. The underlying principle in cases of this sort is that knowledge of the agent is the knowledge of the principal, without regard to whether the agent communicates the facts to it.").

We agree that summary judgment was inappropriate on the waiver issue. There is a material issue of fact regarding Reed's knowledge of the status of Suydam's vessel. Judy Rodosevich, the Reed employee who issued the insurance policy, testified that she had assumed that the vessel would be ready to depart in two weeks to a month. She admitted that she had been told that "[m]inor carpentry work, incidental odds and ends on deck and so forth, and foaming the tanks and stability test" remained to be done. Suydam, on the other hand, testified that he told Rodosevich that the vessel was still being outfitted and that it would be a month, or several months, before it was ready to go fishing.

■ There is also a material issue of fact regarding whether Reed was acting as the agent of Jennings. Jennings argues that Reed was the agent of the insured, Suydam, as a matter of law. Jennings misrepresents agency law. Since there is no federal admiralty law on the issue of agency in the marine insurance context, we turn to Washington law on the subject. *Lien Ho Hsing Steel Enterprise Co. v. Weihtag,* 738 F.2d 1455, 1458 (9th Cir.1984). Washington law on agency is as follows:

> Generally, an insurance broker is the agent of the insured. Whether the broker is also the agent of the insurer is *a question of fact* and depends upon what he is doing and for whom when liability arises. Additionally, there must be some evidence or fact from which a fair inference of authorization by the insurer may be deduced in order to make the broker the agent of the insurance company.

*Prosser Commission Co., Inc. v. Guaranty National Insurance Co.,* 41 Wash.App. 425, 433, 700 P.2d 1188, 1192 (1985) (citations omitted) (emphasis added). Although the parties dispute the point, the affidavit of Don Levis raises at least a material issue of fact as to whether Reed had the authority to bind Jennings to coverage. The affidavit suggests that Reed was acting as the agent of Jennings when it issued the insurance policy.

## VI.

■ There are also material issues of fact on the question of estoppel. It is well-established that an insurer may be estopped from asserting a breach of warranty. G. Gilmore & C. Black, *The Law of Admiralty* § 2–7, p. 67 (2d ed. 1975). Washington law is in accord. *See Sullivan v. Great American Insurance Co.,* 23 Wash.App. 242, 247, 594 P.2d 454, 457 (1979) (citation omitted) ("[I]nsurer may be estopped, by its conduct or its knowledge or by statute, from insisting upon a forfeiture of a policy …").

The parties dispute the exact date on which Jennings received notice of Suydam's claim. Nonetheless, at the very latest, Jennings received notice on September 13, 1983 when he was presented with the entire claims file. At this time, despite indications in the file that the vessel was under construction at the time of the accident, Jennings decided to "await [the] outcome" of the investigation being conducted by Rodney Fonda at the law firm of Madden, Poliak. Jennings took no action to deny coverage. It was not until over a year later in his October 19, 1984 answer that he first indicated that he would deny coverage.

The Washington Administrative Code requires an insurer to complete investigation of a claim within 30 days, to act promptly on a claim, to provide a written denial when a claim is denied, and to specify the policy provision under which coverage is denied. Wash.Admin.Code §§ 284–30–370, 284–30–330, 284–30–380 (1978). Jennings does not argue that he complied with these regulations. Instead, he points to the district court's holding that "[t]his regulation authorizes the Washington State Insurance Commissioner to take certain actions in respect to certain unfair trade practices of insurers; it does not authorize this Court to act in the present matter."

The district court should have given more weight to the provisions of the Washington Administrative Code. Under Washington law, "regulatory statutes become a part of the policy of insurance." *Touchette v. Northwestern Mutual Insurance Co.,* 80 Wash.2d 327, 332, 494 P.2d 479, 482 (1972); *State v. Kerry,* 34 Wash.App. 674, 677, 663 P.2d 500, 501 (1983) (regulations have the force of law). The provisions of the Washington Administrative Code are evidence that Jennings should be estopped from asserting the breach of warranty by Suydam.

Further evidence supporting Williamson's estoppel theory is found in the December 28, 1981 reservation of rights letter. The letter was signed by Rodney Fonda at Madden, Poliak and sent to Suydam's attorney. It was written "on behalf of Kevin Suydam's P & I underwriters." The letter offered to accept Suydam's defense in a lawsuit filed by Williamson subject to a reservation of rights on the Longshoreman

Harbor Worker's Compensation Act claim. The failure to raise lack of coverage at this stage may result in estoppel. In *Bosko v. Pitts & Still, Inc.*, 75 Wash.2d 856, 864, 454 P.2d 229, 234 (1969), the Washington Supreme Court held:

> [I]t is the general rule that if an insurer denies liability under the policy for one reason, while having knowledge of other grounds for denying liability, it is estopped from later raising the other grounds in an attempt to escape liability, provided that the insured was prejudiced by the insurer's failure to initially raise the other grounds.

Jennings vigorously objects that Fonda was not acting on his behalf when he wrote the reservation of rights letter. The fact that Fonda's letter was written on behalf of the "underwriters" and the fact that Jennings decided to "await [the] outcome" of Fonda's investigation suggest otherwise. Moreover, the insurance policy listed Madden, Poliak as the law firm which would handle claims.

## VII.

Finally, Williamson argues that the district court should have granted his motion for summary judgment. The denial of a motion for summary judgment is not an appealable order. *Oppenheimer v. Los Angeles County Flood Control Dist.*, 453 F.2d 895, 895 (9th Cir.1972). Therefore, we will not review this contention.

## VIII.

Several issues of material fact remain in this case; summary judgment was inappropriate.

REVERSED AND REMANDED.