Jacinta YU; Yu & AAS Corporation,
Plaintiffs–Appellants,

v.

ALBANY INSURANCE COMPANY;
Gre Insurance Company,
Defendants–Appellees.

No. 99–16194.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 16, 2001.

Filed Feb. 7, 2002.

Ronald G.S. Au, Honolulu, HI, for the plaintiffs-appellants.

Richard B. Miller, Honolulu, HI, for the defendants-appellees.

Before: B. FLETCHER, CANBY, JR., and PAEZ, Circuit Judges.

## OPINION

CANBY, Circuit Judge.

This case involves a dispute over a marine insurance policy. The plaintiffs, Jacinta Yu and Yu & AAS Corporation ("the Yus"), owned the fishing vessel "Liberty," half of which was insured by defendant Albany Insurance Company. When the Liberty sank, the Yus submitted a claim to Albany. Albany denied the claim on the ground that the Yus had failed to comply with the policy's "Captain Warranty," which provided that the policy would be suspended when the vessel's captain was replaced unless Albany had approved the new captain in advance. The Yus then filed suit in the district court, claiming that Albany had breached its contract. The district court awarded summary judgment to Albany, reasoning that the Yus had failed to comply with the unambiguous "Captain Warranty," and were thus not entitled to recover on the policy. We agree with the district court's conclusion, and affirm the grant of summary judgment to Albany.

## Factual Background

In October 1996, the Yus approached a broker, Ocean Marine Insurance Agency, Inc., to obtain insurance on their fishing vessel, the Liberty. Through its principal, Patrick Kudlich, Ocean Marine obtained a policy for the Yus that was partly under-written by Albany Insurance Company. The policy contained a "Captain Warranty," which provided:

> It is understood and agreed that the Captain of the vessel is Gregory P. Walker, and it is warranted by the Assured that Gregory P. Walker shall be aboard at all times the vessel is navigating. If Gregory P. Walker is not aboard the vessel while it is navigating, and if Underwriters have not previously agreed to a suitable replacement, coverage under this policy shall be suspended until Gregory P. Walker returns to the vessel.

In January 1997, Kudlich forwarded the policy to the Yus, and included a one-page cover letter, in which he advised the Yus to review the policy, particularly the Captain Warranty. The letter stated:

> Please review the policy and its endorsements carefully, paying particular attention to . . . the Special Terms/Conditions endorsement paragraph 3—Captain Warranty. The Captain Warranty is very important, that you must tell me the name of any new captain that replaces Greg Walker prior to the new captain operating the vessel. Failure to abide by this warranty could null and void the insurance policy.

A month later, the Yus orally requested that Kudlich add Frank Dorhofer as captain of the Liberty. Kudlich requested the Yus to provide Dorhofer's resume, which they did. It reflected that Dorhofer had 13 years experience as captain of a fishing vessel. After receiving the request and resume, Albany agreed in an endorsement to the policy that Dorhofer was an "additional approved operator" under the Captain Warranty. This agreement was retroactive to January 1, 1997.

In December 1997, the Liberty sank in waters off the coast of Hawaii. At that

time, the Captain of the Liberty was neither Greg Walker nor Frank Dorhofer, but another individual—Jorge Perez. When the Yus tendered a claim to Albany for the loss of the vessel, Albany refused to pay. Albany observed that it had not agreed to Perez as a captain, and that the Yus were therefore not in compliance with the Captain Warranty.

The Yus argue that they complied with the Warranty. They asserted that in July 1997, Eric Yu had left a telephone message on their insurance broker's (i.e., Kudlich's) answering machine indicating that Jorge Perez was to be the new captain of the Liberty. According to the Yus, leaving this message was all they needed to do to comply with the Captain Warranty.[1] Kudlich, on the other hand, asserted that he was never informed about the Yus' desire to add Perez as a captain, and that he therefore never requested a resume of Perez's qualifications to get approval from Albany. Because we are reviewing a summary judgment, we accept as true for purposes of decision Eric Yu's statement that he left his telephone message with Kudlich. The Yus offered no evidence, however, that they supplied Perez's resume to Kudlich or Albany.

The district court granted summary judgment to Albany on the Yus' claim that Albany had impermissibly refused to cover the loss. The court concluded that because the Yus had failed to comply with the policy's requirement that they obtain Albany's agreement to any new captain of the Liberty in order to maintain coverage under that policy, coverage had been suspended at the time the Liberty sank. This appeal followed.

▮ The district court had jurisdiction in admiralty over this case of marine insurance. 28 U.S.C. § 1333; *see La Reunion Francaise SA v. Barnes*, 247 F.3d 1022, 1024–25 (9th Cir.2001). We have jurisdiction of the appeal pursuant to 28 U.S.C. § 1291. Disputes arising under marine insurance contracts are governed by state law, in this case Hawaii law, unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice. *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir.1998). We review de novo the district court's grant of summary judgment. *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 390 (9th Cir.2000).

## Discussion

The Yus argue that they raised a triable issue of fact that they had complied with the Captain Warranty. They also argue alternatively that, if they did not comply, they are nevertheless entitled to recover because of ambiguity in the Warranty, a course of dealing negating the terms of the Warranty, and an absence of evidence that their non-compliance caused the loss of the vessel. They also contend that they are entitled to relief under a statute governing representations, and on a principle of estoppel. We reject all of these contentions.

## 1. The Yus did not comply with the Captain Warranty.

▮ The Yus did not raise a triable issue of compliance with the Warranty. The policy required that Albany "agree to" a replacement captain in order for the vessel to be covered, a requirement that was made evident not only by the policy's plain language, but also by the fact that, prior to extending coverage to replacement Captain Dorhofer, Albany executed a written endorsement "agreeing" that Dorhofer was an acceptable replacement. Here, it

1. Eric Yu also contends that he provided a copy of the U.S. Coast Guard's report to Patrick Kudlich, which noted that Jorge Perez was the operator of the Liberty.

is undisputed that Albany never "agreed to" Captain Perez, as it had with Dorhofer. A telephone message to the broker does not meet the requirements of the Warranty. Consequently, the district court was correct in ruling as a matter of law that the Yus were in breach of the Warranty.

### 2. The Captain Warranty is not ambiguous or inconspicuous.

 The Yus' next (and least persuasive) contention is that, even if they breached the Captain Warranty, the warranty is unenforceable because it is ambiguous and inconspicuous.[2] It is true that under Hawaii law,[3] insurance policies must be construed as liberally as possible in favor of the insured and all ambiguities must be resolved against the insurer. *Masaki v. Columbia Cas. Co.*, 48 Haw. 136, 395 P.2d 927, 929 (1964). But this rule does not mean that the court should "create ambiguity where none exists." *State Farm Mut. Auto. Ins. Co. v. Fermahin*, 73 Haw. 552, 836 P.2d 1074, 1077 (1992) (citations omitted). Here, there was nothing ambiguous about the Captain Warranty, with its statement that "coverage under this policy shall be suspended until [an approved captain] returns to the vessel."

The Yus' contention that the Captain Warranty was inconspicuous is equally unpersuasive. The Captain Warranty was printed in bold, underlined, capitalized letters, making it conspicuous. The Captain Warranty was also conspicuous because it had blanks filled with the name "Gregory P. Walker," which was typed in a different font and size from the lettering on the rest of the page, drawing one's attention to it. Moreover, the Captain Warranty was one of only six special conditions placed on that page. Finally, when the policy was forwarded to the Yus by Kudlich, Kudlich's letter specifically called the Yus' attention to the Captain Warranty, warning the Yus that "[f]ailure to abide by this warranty could null and void the insurance policy."

### 3. The parties' prior course of dealing did not render the Captain Warranty unenforceable.

 The Yus' next contention is that the parties' prior course of dealing waived the requirement that Albany agree to any change of captain.[4] The Yus base their contention on the fact that when Albany agreed to Captain Dorhofer as a replacement captain, on February 26, 1997, Albany allowed for coverage to be retroactive to January 1, 1997. As a result, the Yus contend, Albany was allowing Dorhofer to be covered for January, even though Albany had not approved Dorhofer during that entire month. Consequently, the Yus contend, Albany was waiving its requirement that a captain be "agreed to" for coverage to continue.

We reject this contention. At most, this incident showed that Albany would consider extending retroactive coverage *after* it had agreed to an acceptable replacement

---

**2.** We review de novo the district court's analysis of contractual language and its application of principles of contract interpretation. *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985).

**3.** Hawaii law applies here because there is no general federal rule governing how the language in marine insurance contracts is to be construed. *Cf. Morrow Crane Co. v. Affiliated FM Ins. Co.*, 885 F.2d 612, 614 (9th Cir.1989) (specific language in contract was governed by federal law only because there was an established federal rule concerning the specific language at issue).

**4.** The Yus cite little in the way of Hawaii law to establish that a prior course of dealing can modify the explicit terms of a contract. For purposes of this argument, we assume without deciding that a prior course of dealing can do so under Hawaii law.

captain; this incident did not waive the Captain Warranty altogether. Were we to take the Yus' position to its logical conclusion, Albany's extension of retroactive coverage to Dorhofer would mean that the Yus suddenly had unbounded discretion to choose *any* replacement captain, regardless of qualifications, without having Albany agree to such a replacement. We reject this unreasonable proposition.

**4. The lack of evidence of a causal connection between the Yus' breach of the Captain Warranty and the loss of the vessel does not preclude summary judgment.**

The Yus' next argument is that the breach of the Captain Warranty must be shown to have caused the loss of the Liberty for Albany to avoid coverage on the policy. Because such a showing has yet to be made, the Yus maintain, an issue of material fact precludes summary judgment. We reject this contention because we conclude that no showing of causation of loss is required to render the Warranty's suspension of coverage effective.

Ordinarily, our analysis of this issue would begin by deciding whether state or federal law governs. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14, 75 S.Ct. 368, 99 L.Ed. 337 (1955); *see also Kiernan*, 150 F.3d at 1121. In resolving such a question, we would apply state law unless an established federal rule addressed the issues raised, or there was a need for uniformity in admiralty practice. *Kiernan*, 150 F.3d at 1121.

In this case, the district court applied this test, and 2114 determined that there was a judicially established federal admiralty rule requiring captain warranties to be strictly enforced. The district court based its conclusion on four cases stating that, under federal law, a marine insured must strictly comply with a policy's express warranties in order to be covered under that policy. *See Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988); *Albany Ins. Co. v. Jones*, No. A95–330, 1996 WL 904756, at *3 (D.Alaska Dec.17, 1996); *Port Lynch, Inc. v. New England Int'l Assurety of Amer. Inc.*, 754 F.Supp. 816, 823 (W.D.Wash.1991); *Florida Marine Towing, Inc. v. United Nat'l Ins. Co.*, 686 So.2d 711, 713 (Fla.Dist.Ct. App.1997). The Yus do not challenge the district court's reading of these cases to require strict compliance with warranties, irrespective of causation of loss, but they contend that none of these cases establishes that uniform federal law governs the application of captain's warranties. The Yus contend that the district court erred in not applying Hawaii law, which the Yus contend requires causation of loss before breach of a warranty can result in a denial of coverage.

■ We need not decide, however, whether federal or state law governs because we conclude that, even under Hawaii law, the violation of the Captain Warranty suspends coverage whether or not the violation has been shown to have caused the loss.[5] *Cf. Continental Oil Co. v. Bonanza*

---

**5.** We have previously recognized that the choice of law determination in the wake of *Wilburn Boat Co. v. Fireman's Ins. Co.*, 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955), can be "troublesome." *Bohemia, Inc. v. Home Ins. Co.*, 725 F.2d 506, 509 (9th Cir. 1984); *see also* Joel K. Goldstein, *The Life and Times of Wilburn Boat: A Critical Guide (Part II)*, 28 J. Mar. L. & Com. 555, 572 (1997)

(describing the confusion *Wilburn Boat* has created in the federal courts). Because our case law provides little guidance as to how "established" a federal rule must be to govern a marine insurance dispute, it is unclear whether the district court was correct that an established federal rule requires that captain warranties be strictly enforced. *See Suydam v. Reed Stenhouse of Washington, Inc.*, 820

*Corp.*, 677 F.2d 455, 461 n. 7 (5th Cir.1982) (noting that the court avoids the *Wilburn Boat* choice of law inquiry whenever possible). Indeed, the district court, although relying on federal law, stated that, if it were to apply state law, it would conclude that Hawaii law would enforce the Captain Warranty according to its terms.

It is true that neither Hawaii statutory law, nor Hawaii case law, has said anything about whether or not captain warranties are to be enforced without regard to causation of loss. Nonetheless, we are convinced that Hawaii would adopt the rule that a marine insurer can avoid liability for breach of a captain warranty, regardless of whether that breach caused the loss. Indeed, this rule is in place in most states, and has been widely adopted largely because of the "recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on the . . . warranties made by insureds regarding their vessels' condition and usage." *Commercial Union Ins. Co. v. Flagship Marine Servs., Inc.*, 190 F.3d 26, 31–32 (2d Cir.1999).[6] Furthermore,

this rule is consistent with the manner in which express warranties have traditionally been enforced in marine insurance contracts. *See* 6 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 83:20 (3d ed. 1995) ("In marine insurance, there is historically no requirement that the breach of warranty relate to the loss, so that any breach bars recovery even though a loss would have happened had the warranty been carried out to the letter.").

■ Hawaii law recognizes that insurance policies in general are to be construed in accord with the reasonable expectations of the parties, but those expectations must be *objectively* reasonable, and this rule will not permit an insured to avoid limitations on coverage that are neither ambiguous nor inconspicuous. *See, e.g., Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 684 P.2d 960, 964 (1984); *Fortune v. Wong*, 68 Haw. 1, 702 P.2d 299, 305–06 (1985). When, as here, there is no ambiguity, the policy provision is to be enforced according to its plain terms. *See Barber v. Chatham*, 939 F.Supp. 782, 786–87 (D.Haw.

F.2d 1506, 1508 (9th Cir.1987) (referring to state law to resolve the consequences of a breach of an express warranty in a marine insurance policy); *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 892 (5th Cir.1991) (applying Texas law to require a causal connection between a breach of an express warranty and a loss); *Wilburn Boat*, 348 U.S. 310 at 315–16, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (stating that "[t]here are very few federal cases on marine insurance in which the strict breach of warranty rule has even been considered" and that the consequence of breaching an express warranty was to be determined by state law).

6. In *Commercial Union*, the Second Circuit stated in dictum that Hawaii was an exception to the general rule of enforcing warranties without regard to causation of loss. *Commercial Union*, 190 F.3d at 32. With all due respect, we disagree. In support of its statement, the Second Circuit cited David D. Hal-

lock, Jr., *Recent Developments in Marine Hull Insurance: Charting a Course Through the Coastal States of the Fourth, Fifth, Ninth, and Eleventh Circuits*, 10 U.S.F. Mar. L.J. 277, 303 (1998). That article states that Hawaii law requires a causal relation between breach of warranty and loss, and it cites for that proposition only *AVEMCO Ins. Co. v. Chung*, 388 F.Supp. 142 (D.Haw.1975). Hallock, 10 U.S.F. Mar. L.J. at 333. *AVEMCO*, however, involved aviation rather than maritime insurance. The district court in that case construed a "Declaration" requiring the pilot to have a current medical certificate to be a condition subsequent to the policy, and held that, unless the condition were phrased as an unequivocal exclusion, Hawaii law would not deny coverage for its breach unless the breach were a cause of the loss. *AVEMCO*, 388 F.Supp. at 149–51. We conclude that *AVEMCO* is not applicable here because it did not deal with marine insurance and an unequivocal warranty.

1996) (applying Hawaii law). We conclude that Hawaii would apply the present Captain Warranty, which was neither ambiguous nor inconspicuous, according to its terms, with no requirement that the breach be shown to be a cause of the loss.

There are sound policy reasons for strictly enforcing a captain's warranty in marine insurance. Like warranties concerning navigation,[7] the captain's warranty permits the insurer to control the amount of risk it assumes, and the insured thereby to secure a reasonable premium. To inject a requirement of loss causation would lead to uncertainty in determining the obligations of the parties, and would make coverage depend on highly hypothetical determinations of causation.[8] Thus it is not unreasonable to permit the parties to insert and enforce a strict captain's warranty in a marine insurance policy.

It is true that some states, such as Texas, have enacted statutes requiring that an insurer demonstrate a causal connection between a breach of warranty and the loss in order to avoid coverage. *See Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882, 892 (5th Cir.1991) (applying Texas statute to require a causal connection between a breach of an express warranty and a loss); *Windward Traders, Ltd. v. Fred S. James & Co. of New York, Inc.*, 855 F.2d 814, 818 (11th Cir.1988) (applying Florida statute). In the absence of such a statute, however, we do not believe that Hawaii would impose such a requirement, particularly to warranties that are an "essential part of an insurance contract" which directly "affect[ ] the risk ... undertaken." *Jones*, 1996 WL 904756, at *3.

In sum, we conclude that, regardless of whether federal or Hawaii law applies, the Captain Warranty is to be applied according to its terms, whether or not the breach that caused suspension of coverage caused the loss. There is accordingly no merit to the Yus' contention that summary judgment is precluded by the existence of a dispute over causation of the loss; causation is not a material fact. *See* Fed.R.Civ.P. 56(c).

**5. The Yus' breach of the Captain Warranty was not a "misrepresentation" under Hawaii law.**

 The Yus next contend that their breach of the Captain Warranty qualifies as a "misrepresentation" within the meaning of Haw.Rev.Stat. § 431:10–209 (2001), which provides:

> All statements or descriptions in any application for an insurance policy or in negotiations therefor, by or on behalf of the insured, shall be deemed to be representations and not warranties. A misrepresentation shall not prevent a recovery on the policy unless made with actual intent to deceive or unless it materially affects either the acceptance of the risk or the hazard assumed by the insurer.

It is clear from its text, however, that this provision applies only to statements or descriptions in an application for an insurance policy or in negotiations therefor. The Captain Warranty was neither of these, but rather part of the insurance contract itself. Indeed, section 431:10–209 clearly distinguishes between warranties and representations, and imposes limitations only on the latter.

---

7. The Yus' policy also warranted that the vessel would be operated only in the Pacific Ocean not more than 750 miles offshore of the Hawaiian Islands.

8. For example, if some error of Captain Perez caused the vessel to sink, would Albany, in order to avoid coverage, have to show that authorized Captains Walker and Dorhofer would not have made the same mistake?

### 6. There is no material issue of fact as to whether Albany is estopped from asserting a breach of warranty.

The Yus' final contention is that summary judgment was inappropriately granted because there is an issue of fact as to whether Albany is estopped under Hawaii law from denying coverage for the alleged breach of the Captain Warranty.[9] The Yus have probably waived this argument because, notwithstanding their lengthy discussion of our decision in *Suydam v. Reed Stenhouse of Washington, Inc.*, 820 F.2d 1506, 1509–10 (9th Cir.1987), they have failed to provide even the barest discussion of why the facts of *their* case give rise to an estoppel argument. We do not resolve this waiver issue, however, because even if we do consider their estoppel contention, it fails on the merits.

The Yus appear to argue that Albany acted in bad faith by allowing the Yus to continue to operate with the unapproved Perez at the helm. According to the Yus, because Kudlich was acting as an agent for Albany,[10] Kudlich's knowledge of the alleged phone message left by the Yus indicating their desire to add Captain Perez can be imputed to Albany. *See Imperial Fin. Corp. v. Finance Factors, Ltd.*, 53 Haw. 203, 490 P.2d 662, 664 (1971) (when an agent has knowledge which he has a duty to disclose to his principal, that knowledge is imputed to the principal). Once knowledge of the desire to add Perez is imputed to Albany, the Yus' argument appears to suggest, it becomes clear that Albany was acting in bad faith by continuing to collect payments from the Yus, knowing full well that if an accident occurred while Perez was at the helm, Albany would not have to pay on the claim. This bad faith, the Yus appear to contend, should "estop" Albany from denying coverage on the breach of the warranty.

We conclude that the Yus have failed to present a triable issue of estoppel. To have precluded Albany from relying on the breach of warranty under an equitable estoppel theory, the Yus would have had to show that they detrimentally relied on the representation or conduct of Albany, *and* that their reliance was reasonable. *Doherty v. Hartford Ins. Group*, 58 Haw. 570, 574 P.2d 132, 134–35 (1978). In this case, the Yus are unable to make this showing because the undisputed facts indicate that any reliance the Yus may have vested in Albany's silence could not have been reasonable.

Indeed, the insurmountable difficulty for the Yus is that the policy required Albany to "agree to" any replacement captain. As a result, when the Yus failed to receive any notification of an agreement for several months after allegedly informing Kudlich of their desire to add Perez, they should have been doubtful about the status of their coverage. This is particularly true because they had neither furnished nor been asked to furnish any evidence of Perez's qualifications, contrary to prior practice. Thus, it was incumbent upon the Yus to follow up on the status of Perez's ap-

---

9. Because there is no established federal rule governing the doctrine of equitable estoppel in marine insurance contracts, Hawaii law governs. *See Suydam*, 820 F.2d at 1510.

10. Because there is no established federal admiralty rule on agency, state law governs agency determinations. *Suydam*, 820 F.2d at 1510. In Hawaii, an agency relationship may be created through actual or apparent author-

ity. *State Farm Fire & Cas. Co. v. Pac. Rent–All Inc.*, 90 Hawai'i 315, 978 P.2d 753, 763 (1999). Hawaii law is somewhat unclear as to the circumstances under which an insurance broker can act as a "double agent" for both the insurer and insured. We assume without deciding that there is a factual dispute as to whether Kudlich was acting as Albany's agent in its dealings with the Yus.

proval. Relying on Albany's good faith was not an excuse for this failure; the Yus should have recognized that Albany's failure to respond with an approval may have been the result of an unintentional mishandling of the Yus' request, rather an implicit indication that Perez was acceptable. Consequently, the Yus' decision to proceed blindly in the face of Albany's silence was negligent, not reasonable, and their estoppel argument fails as a matter of law.

## Conclusion

For the reasons stated above, the district court properly awarded summary judgment to Albany. The decision of the district court is therefore **AFFIRMED.**