**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| WILLIAM MARTZ; JANE MARTZ, as owners of a Nautique vessel for Limitation of Liability, *Plaintiffs-Appellants*, <br><br> v. <br><br> ANDREW HORAZDOVSKY, *Claimant-Appellee.* | No. 20-35985 <br><br> D.C. No. 3:20-cv-00152-SLG |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

| | |
|---|---|
| FISH N DIVE LLC; HONU GROUP LLC; HONU WATERSPORTS LLC; MATTHEW J. ZIMMERMAN, *Plaintiffs-Appellants*, <br><br> v. <br><br> TYLER BROWN; JAMES A. LIOTTA, as Personal Representative of the Estate of T.T., Deceased estate T.T.; TSOGT NATSAGDORJ, Individually, and as Next Friend of K.T., a Minor next friend K. T; ENKHSUVD BATBOLD; | No. 21-15187 <br><br> D.C. No. 1:19-cv-00604-LEK-WRP <br><br><br> OPINION |

HAWAII SPORTS, INC.,
                    *Claimants-Appellees*,

PADI WORLDWIDE CORPORATION;
PADI AMERICAS, INC.,
    *Real-Parties-in-Interest-Appellees.*

Appeal from the United States District Court
for the District of Hawaii
Leslie E. Kobayashi, District Judge, Presiding

Argued and Submitted August 3, 2021
Anchorage, Alaska

Filed May 10, 2022

Before:  Kim McLane Wardlaw, Eric D. Miller, and
Bridget S. Bade, Circuit Judges.

Opinion by Judge Miller

# SUMMARY[*]

## Maritime Law

The panel reversed two district courts' orders granting summary judgment in favor of defendants in two actions brought under the Shipowner's Limitation of Liability Act by owners of vessels that were involved in accidents.

The owners sought to limit their liability to the value of the vessels and pending freight. Under 46 U.S.C. § 30511(a), to enjoy the benefit of that limit, an owner must bring a limitation-of-liability action "within 6 months after a claimant gives the owner written notice of a claim." In each case, counsel for a victim of a maritime accident wrote to the vessel owner and suggested that the victim might be interested in pursuing litigation against the responsible parties. The owners then brought a limitation-of-liability action, but they did not do so until more than six months after receiving the letter. In each case, the district court determined that the letter constituted "written notice of a claim" and dismissed the action as untimely.

Agreeing with the Fifth and Eleventh Circuits and disagreeing with the Second and Sixth Circuits, the panel held that the six-month statute of limitations in § 30511(a) is a claims-processing rule rather than a jurisdictional rule and therefore is appropriately raised in a motion for summary judgment.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that a "written notice of a claim" has three elements: the notice must (1) be in writing, (2) clearly state that the victim intends to bring a claim or claims against the owner, and (3) include at least one claim that is reasonably likely to be covered by the Limitation Act. Because neither of the letters at issue informed the vessel owners of the claimant's intention to bring a covered claim against the owners, the panel held that neither constituted "written notice of a claim" that started the running of the limitations period. Accordingly, both limitation-of-liability actions were timely. The panel therefore reversed in both cases and remanded for further proceedings.

## COUNSEL

Michael R. Williams (argued), Bush Seyferth PLLC, Kalamazoo, Michigan; Jonathon A. Katcher, Pope & Katcher, Anchorage, Alaska; for Plaintiffs-Appellants William Martz and Jane Martz.

Yale H. Metzger (argued), Law Offices of Yale H. Metzger, Anchorage, Alaska; Daniel I. Pace, Pace Law Offices, Anchorage, Alaska; for Claimant-Appellee Andrew Horazdovsky.

Marker E. Lovell Jr. (argued), Michelle L. Tommey, and R. Hudson Hollister, Gibson Robb & Lindh LLP, Emeryville, California, for Plaintiffs-Appellants Fish N Dive LLC, Honu Group LLC, Honu Watersports LLC, and Matthew J. Zimmerman.

Michael K. Livingston (argued), Mark S. Davis, Loretta A. Sheehan, Thomas M. Otake, and Amalia L. Fenton, Davis Levin Livingston, Honolulu, Hawaii, for Claimants-Appellees Tyler Brown, James A. Liotta, Tsogt Natsagdorj, Enkhsuvd Batbold, and Hawaii Sports Inc.

## OPINION

MILLER, Circuit Judge:

When a vessel is involved in an accident, the Shipowner's Limitation of Liability Act allows the owner to limit its liability to the value of the vessel and pending freight. 46 U.S.C. § 30505. To enjoy the benefit of that limit, the owner must bring a separate limitation-of-liability action

"within 6 months after a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a).

In each of these two cases, which we have consolidated for decision, counsel for a victim of a maritime accident wrote to the vessel owners and suggested that the victim might be interested in pursuing litigation against the responsible parties. The owners then brought a limitation-of-liability action, but they did not do so until more than six months after receiving the letter. In each case, the district court determined that the letter constituted "written notice of a claim" and dismissed the action as untimely.

These cases present two issues of first impression in this circuit: first, whether the six-month statute of limitations in section 30511(a) is a jurisdictional rule, and second, what constitutes "written notice of a claim" sufficient to start the running of the limitations period. Reviewing the grant of summary judgment de novo, *Yu v. Albany Ins. Co.*, 281 F.3d 803, 806 (9th Cir. 2002), we hold that the statute of limitations is not jurisdictional and that a "written notice of a claim" has three elements: the notice must (1) be in writing, (2) clearly state that the victim intends to bring a claim or claims against the owner, and (3) include at least one claim that is reasonably likely to be covered by the Limitation Act. Because neither of the letters at issue informed the vessel owners of the claimant's intention to bring a covered claim against the owners, neither constituted "written notice of a claim" that started the running of the limitations period. It follows that both limitation-of-liability actions were timely. We therefore reverse in both cases and remand for further proceedings.

I

A

On June 9, 2018, Reagan Martz was operating his parents' boat on Flat Lake, Alaska, when he collided with an inflatable raft being towed by another vessel. The collision killed Jennifer Horazdovsky, one of the occupants of the raft.

Over the next few weeks, two different lawyers representing Jennifer Horazdovsky's husband, Andrew Horazdovsky, wrote to the Martz family's lawyer asking for Reagan Martz's insurance information. Horazdovsky then retained a third lawyer, Robert Stone, and on December 4, 2018, Stone sent a three-page letter to the Martzes' lawyer with the subject line "Re: Horazdovsky v. Reagan Martz, William and Jane Martz." In the letter, Stone described the facts underlying the accident as he understood them. He wrote that "Reagan Martz, son of William and Jane Martz, was drinking heavily at a party sponsored by William and Jane Martz" and that "Reagan was a permissive user of a boat owned by his parents." To Stone, the facts "suggest[ed] that Reagan Martz was severely intoxicated, and that as a result of such intoxication, he collided with a raft occupied by Jennifer Horazdovsky"; he added that "Reagan Martz fled the scene, changed from the boat to a jet ski, and continued to flee the scene until he was ultimately apprehended." But Stone said that he was "not yet certain whether William Martz or Jane Martz bear any responsibility." Noting that he "would like to avoid unnecessarily naming parties to a lawsuit," he requested information about the ownership of the relevant property at Flat Lake and any insurance policies covering the Martzes. The Martzes' lawyer responded a few days later, stating that Reagan Martz had no relevant insurance coverage, that "[t]here is no basis for William and Jane Martz having any liability for this accident," and that

"we have not tendered this claim to any insurance companies."

On June 4, 2020, Andrew Horazdovsky, individually and as the personal representative of Jennifer Horazdovsky's estate, sued Reagan, William, and Jane Martz in Alaska state court, seeking damages under various tort theories. Two weeks later, William and Jane Martz brought an action in the District of Alaska for limitation of liability under section 30511(a). Horazdovsky moved for summary judgment on the ground that the action was untimely.

The district court granted the motion. It held that written notice of a claim "need not make an unequivocal demand to the vessel owner for compensation for a loss; it is enough if the notice presents a reasonable possibility of a claim subject to limitation." Applying that rule, the court noted that the correspondence to the Martzes came "by way of [Horazdovsky's] attorneys, immediately lending it some formality and import," and that Stone's letter was "captioned with reference to the adversarial posture of the parties." The court also observed that Stone's letter "outline[d] a theory of liability that implicates the vessel owners." Although acknowledging that Stone's letter was "tentative" in that it referred only to the possibility of legal action, the court reasoned that when read in its entirety, the letter constituted notice of a claim. Because the Martzes did not file their limitation action until more than a year after they received Stone's letter, the court concluded that the action was untimely.

B

On January 5, 2019, 13-year-old T.T. drowned during an open-ocean scuba-diving excursion near Honolulu. The excursion was conducted by Honu Watersports LLC, doing

business as Island Divers Hawaii, on a vessel owned by Fish N Dive LLC; both companies are controlled by an entity owned by Matthew Zimmerman.

Two days after the accident, Loretta Sheehan, an attorney representing T.T.'s family, wrote to Zimmerman to inform him that Sheehan had "been retained to investigate the death of [T.T.] on January 5, 2019, while he was participating in a drift dive with . . . Island Divers Hawaii," and to request that Zimmerman preserve "any and all evidence potentially related to this incident" including "photographs, videos, logs, [and] captain manifests." The letter warned that T.T.'s family would "consider it spoliation of evidence if Island Divers Hawaii alters, modifies, or destroys the evidence involved in this accident." Zimmerman's counsel acknowledged receipt of the letter and advised Sheehan to direct further communications to counsel and not to Zimmerman or any employees of Honu Watersports.

On September 19, 2019, T.T.'s estate and family sued Zimmerman, Honu Watersports, and Fish N Dive in Hawaii state court, seeking damages based on the accident. On November 5, 2019, Fish N Dive brought this action in the District of Hawaii for limitation of liability under section 30511(a).

We pause at this point to observe that the designation of the parties in actions of this kind can be confusing. Like the Martzes in the Alaska case, Fish N Dive is the defendant in the state-court tort action but the plaintiff in the federal limitation-of-liability proceeding. Courts often refer to such parties as the "limitation plaintiffs," but we think it is clearer to call them the "vessel owners" and to describe their adversaries as the "claimants."

Arguing that the limitation-of-liability action was untimely under section 30511(a), T.T.'s estate and family moved to dismiss for lack of subject-matter jurisdiction or, in the alternative, for summary judgment.

The district court denied the motion to dismiss. Noting that "[t]here is no clear jurisdictional language in the text of § 35011(a)," the court concluded that the limitations period in the statute "is a claims processing rule, not a jurisdictional requirement." It therefore held that the timeliness of the limitation action "will be determined under the summary judgment standard."

The district court granted the motion for summary judgment. The court held that to constitute "written notice of a claim," a communication must "inform[] the shipowner of an actual or potential claim." The court considered the reference to "spoilation of evidence" and the statement that the firm had been "retained to investigate the death of [T.T.]" sufficient to satisfy that requirement. And it concluded that the letter conveyed a claim reasonably subject to limitation because a wrongful death claim would necessarily have exceeded the value of the vessel, which was only $40,000. Because Fish N Dive had filed its limitation-of-liability action almost a year after it received the evidence-preservation letter, the court concluded that its claim was untimely.

II

Before we determine what events start the running of the limitations period in section 30511(a), we consider whether that provision limits the district court's jurisdiction or whether it is merely a claim-processing rule. If the statute is jurisdictional, then the untimeliness of a limitation-of-liability action would appropriately be asserted in a motion

to dismiss under Federal Rule of Civil Procedure 12(b)(1), like that brought by the claimants in the Hawaii case. *See Thornhill Publ'g Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). In addition, a district court would have a duty to consider the timeliness of such an action sua sponte. *See Pacific Choice Seafood Co. v. Ross*, 976 F.3d 932, 938 (9th Cir. 2020).

Courts of appeals have disagreed about whether section 30511(a) is jurisdictional. *See Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976) (treating the time limit as jurisdictional); *Petition of Spearin, Preston & Burrows, Inc.*, 190 F.2d 684, 685–86 (2d Cir. 1951) (same); *In re Bonvillian Marine Serv., Inc.*, 19 F.4th 787, 793–94 (5th Cir. 2021) (treating the time limit as not jurisdictional); *Orion Marine Constr., Inc. v. Carroll*, 918 F.3d 1323, 1328–29 (11th Cir. 2019) (same). We agree with those courts that have held that section 30511(a) is an ordinary statute of limitations and is not jurisdictional.

The Supreme Court has held that only when Congress "clearly states that a threshold limitation on a statute's scope shall count as jurisdictional" should it be treated as jurisdictional. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515–16 (2006); *see Al-Qarqani v. Chevron Corp.*, 8 F.4th 1018, 1024 (9th Cir. 2021). Statutory time limits, in particular, are jurisdictional "only if Congress has 'clearly state[d]' as much." *United States v. Wong*, 575 U.S. 402, 409 (2015) (alteration in original) (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013)). And "most time bars are nonjurisdictional" because they are merely "'claim-processing rules,' which 'seek to promote the orderly progress of litigation,' but do not deprive a court of authority to hear a case." *Id.* at 410 (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)).

Section 30511(a) states that "[t]he action must be brought within 6 months after a claimant gives the owner written notice of a claim." It does not refer to the court's jurisdiction or otherwise suggest that it limits the court's adjudicatory power. Such "mundane statute-of-limitations language" does not create a jurisdictional limitation. *Wong*, 575 U.S. at 410; *see also Gonzalez v. Thaler*, 565 U.S. 134, 146 (2012). We therefore conclude that section 30511(a) is not jurisdictional. So, as both district courts below recognized, the untimeliness of a limitation-of-liability action is a merits issue appropriately raised in a motion for summary judgment.

III

Both of these appeals turn on what constitutes "written notice of a claim" under section 30511(a) and therefore starts the running of the statute of limitations. The district court in the Alaska case held that the key requirement is that the claimant communicate "the reasonable possibility of a claim." The district court in the Hawaii case took a similar view, concluding that the limitations period begins to run when the claimant "informs the shipowner of an actual or potential claim." In our view, both of those statements are overly expansive.

We begin our analysis with the statutory text. *See Van Buren v. United States*, 141 S. Ct. 1648, 1654 (2021); *Hall v. United States Dep't of Agric.*, 984 F.3d 825, 837 (9th Cir. 2020). Section 30511(a) contains two sentences. The first allows a vessel owner to bring a limitation-of-liability action: "The owner of a vessel may bring a civil action in a district court of the United States for limitation of liability under this chapter." And the second sets out the statute of limitations that governs such an action: "The action must be brought within 6 months after a claimant gives the owner

written notice of a claim." We hold that the phrase "written notice of a claim" imposes three requirements: the notice must (1) be in writing, (2) clearly state that the victim intends to bring a claim or claims against the owner, and (3) include at least one claim that is reasonably likely to be covered by the Limitation Act.

First, the statute requires "written notice." Because the notice must be written, it is the text of the writing—and not the extrinsic circumstances of its delivery—that determines whether a vessel owner has received notice of a claim. The claimants are therefore incorrect when they suggest that the "factual circumstances" of an accident can be sufficient to alert vessel owners of an impending claim. Modern American society is sufficiently litigious that anyone involved in an accident should be aware that claims for damages are a reasonable possibility. But the statute requires something more: "written notice." We therefore agree with the Eleventh Circuit that "[t]he Act's plain text . . . requires that the claimant provide written notice to the [vessel] owner." *Orion Marine Constr.*, 918 F.3d at 1333 n.4 (emphasis omitted). Thus, "even actual knowledge of alleged damage is no substitute for the *written* notice required by the Act." *Id.*

To be sure, the notice need not be a formal complaint, and it need not employ any particular form of words. The statute does not require that the claimant "file" a notice of a claim—a verb that would suggest some level of formality—but only that it "give" notice. For that reason, courts have agreed "that letters sent by claimants to vessel owners may constitute notice of claim." *Doxsee Sea Clam Co. v. Brown*, 13 F.3d 550, 554 (2d Cir. 1994); *accord Orion Marine Constr.*, 918 F.3d at 1333 n.4 (noting "that *informal* written notice, such as a letter sent by a claimant or his attorney, will

suffice under the Act in lieu of a formal complaint"). And by referring to "written notice," not "*a* written notice," the statute allows notice to be provided in multiple documents. *In re Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 603–04 (5th Cir. 2014), *overruled on other grounds by Bonvillian Marine Serv.*, 19 F.4th at 790; *see Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1480–81 (2021) (relying on the indefinite article "a" in the phrase "a notice to appear," 8 U.S.C. § 1229(a), to hold that the notice must be contained in a single document).

Second, the notice must be of a "claim." The word "claim" means "a demand of a right or supposed right" or "a demand for compensation, benefits, or payment"—a meaning that is essentially unchanged since 1936, when the statute of limitations was first enacted. *Webster's Third New International Dictionary* 414 (2002); *accord Black's Law Dictionary* 311 (11th ed. 2019) (an "assertion of an existing right"); *see* 46 U.S.C. § 185 (1940) ("The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation . . . ."); *Webster's Second New International Dictionary* 493 (1934). And in construing the word "claim" in other statutes, we have recognized that it "contemplates, in general usage, a demand for payment or relief, and, unless it is a claim *for* something, is no claim at all." *Avril v. United States*, 461 F.2d 1090, 1091 (9th Cir. 1972); *see also Avery v. United States*, 680 F.2d 608, 609–11 (9th Cir. 1982). Thus, for a writing to constitute "notice of a claim," it must be formulated to "actually inform a shipowner of the claimant's intentions to seek recovery from the owner." *In re Complaint of N.Y.T.R. Transp. Corp.*, 105 F.R.D. 144, 146 (E.D.N.Y. 1985); *accord In re Complaint of Okeanos Ocean Rsch. Found., Inc.*, 704 F. Supp. 412, 414 (S.D.N.Y. 1989) ("[T]he

notice must inform the owner of a claimant's intention to seek damages."). A vessel owner is not required to guess the claimant's intentions, and a tentative statement, or one that merely hints at the possibility of asserting a claim, is not enough.

Third, as we have previously held, the statute requires notice not just of any kind of claim, but of a claim for which the vessel owner could reasonably seek limitation of liability. *See Jung Hyun Sook v. Great Pac. Shipping Co.*, 632 F.2d 100, 102 (9th Cir. 1980); *see also In re Complaint of McCarthy Bros. Co./Clark Bridge*, 83 F.3d 821, 829 (7th Cir. 1996); *In re Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 683 (5th Cir. 1996). If the value of the claim described in the notice is less than the value of the vessel and its pending freight, or if the claim is not subject to limitation under the Limitation Act, then the vessel owner has not received "written notice of a claim" that is relevant to section 30511(a).

The key difference between our interpretation of the statute and that of the district courts in these cases concerns the second part of the test, requiring that the writing inform the vessel owner that the claimant intends to seek a recovery from the owner. The district courts held that notice of "the reasonable possibility of a claim" or a "potential claim" was sufficient to start the running of the limitations period. But as we have explained, a "reasonable possibility" of a claim or a "potential claim" is not enough. Rather, the writing must convey to the vessel owner the claimant's actual intent to initiate a claim.

In reaching a contrary conclusion, the district courts applied language that has been used by other courts of appeals. Under the test used in the Second, Seventh, and Eleventh Circuits, for example, "a letter sent to a shipowner

by a claimant is sufficient to trigger the six-month period if (1) it informs the shipowner of an *actual or potential claim* (2) which may exceed the value of the vessel (3) and . . . reveal[s] a 'reasonable possibility' that the claim made is one subject to limitation." *McCarthy Bros.*, 83 F.3d at 829 (emphasis added) (quoting *Tom-Mac*, 76 F.3d at 683); *accord Doxsee Sea Clam Co.*, 13 F.3d at 554; *Orion Marine Const.*, 918 F.3d at 1331. Similarly, the Fifth Circuit asks "(1) whether the writing communicates the *reasonable possibility* of a claim, and (2) whether it communicates the *reasonable possibility* of damages in excess of the vessel's value." *RLB Contracting*, 773 F.3d at 602; *see also In re Eckstein Marine Serv. LLC*, 672 F.3d 310, 317 (5th Cir. 2012), *overruled on other grounds by Bonvillian Marine Serv.*, 19 F.4th at 790.

Some of those cases, however, did not turn on the distinction between an actual claim and a "potential claim" or the "possibility of a claim." Instead, they involved communications that unambiguously asserted a claim, and the disputes focused on whether the claim was likely subject to limitation. *See*, *e.g.*, *McCarthy Bros.*, 83 F.3d at 829; *Doxsee Sea Clam Co.*, 13 F.3d at 552, 554. Thus, it is possible that those courts of appeals, if confronted with the question, would agree with our conclusion that an actual claim is required. But to the extent our position differs from that of other circuits, we think it is compelled by the statutory text, which refers simply to a "claim," not a "possible" or "potential" claim.

The claimants resist this interpretation, urging that section 30511(a) should be "strictly construed." In support of that argument, they correctly observe that we have previously described the Limitation Act as "a relic of an earlier era." *Esta Later Charters, Inc. v. Ignacio*, 875 F.2d

234, 239 (9th Cir. 1989). Indeed, more than 60 years ago, Judge Learned Hand suggested that "it is at least doubtful whether the motives that originally lay behind the limitation are not now obsolete." *In re United States Dredging Corp.*, 264 F.2d 339, 341 (2d Cir. 1959). And we have proposed that "Congress might be well advised to examine other approaches or to consider whether the rationale underlying the Liability Act continues to have vitality." *Esta Later Charters*, 875 F.2d at 239. But the critical word in that proposal is the first one: It is for Congress, not the courts, to repeal or amend statutes that have become obsolete. *Cf. Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1738 (2020). And just as we may not repeal statutes that we consider outmoded, neither should we adopt special rules of strict construction to narrow their effect.

In any event, whatever might be said about the purposes of the Limitation Act as a whole, we do not believe that our interpretation disserves the purposes of its statute of limitations. Congress enacted the Limitation Act in 1851 in response to multiple incidents in which a vessel owner was "held liable for significant damage amounts under the common law rule of common carrier liability, which did not require proof that the owner was negligent or at fault." *Joyce v. Joyce*, 975 F.2d 379, 383 (7th Cir. 1992); *see Norwich & N.Y. Transp. Co. v. Wright*, 80 U.S. 104, 108–10 (1871). Its apparent goal was to protect investments in shipbuilding so that the American shipping industry could compete with that of Great Britain. *See Norwich*, 80 U.S. at 121–22; *Joyce*, 975 F.2d at 383–84.

In 1936, Congress added the six-month limitations period. Act of June 5, 1936, ch. 521, 49 Stat. 1480. Like all statutes of limitations—indeed, like all statutes generally—it reflects a balance between competing considerations. On

the one hand, a strict limitations period would prevent vessel owners from waiting until after a judgment has been issued against them to petition to limit liability, thereby unnecessarily wasting the time and resources of claimants. *See The Fred Smartley, Jr.*, 108 F.2d 603, 607 (4th Cir. 1940); *Complaint of N.Y.T.R. Transp. Corp.*, 105 F.R.D. at 145.

On the other hand, a more generous limitations period would reduce the burden on vessel owners. To bring a limitation-of-liability action, the vessel owner must either transfer "the owner's interest in the vessel and pending freight" to a trustee appointed by the court or deposit with the court an amount equal to that value. 46 U.S.C. § 30511(b). That is a costly step "to require . . . of [a vessel owner] upon penalty of losing his privilege when the claimant's position is equivocal." *In re Allen N. Spooner & Sons, Inc.*, 253 F.2d 584, 586 (2d Cir. 1958) (Hand, J., concurring). In addition, Congress could have been concerned that if a mere suggestion of a claim were enough to start the six-month clock, claimants would be encouraged to be ambiguous in their communications with vessel owners. *See McCarthy Bros.*, 83 F.3d at 829–30 ("The real danger in failing to hold claimants to a fairly high level of specificity in letters is that the claimant may nullify a shipowner's right to file a limitation action by sending a cryptic letter and then waiting more than six months to file a complaint.").

We conclude that "[a]s usual, there are (at least) two sides to the policy questions before us" and that "a rational Congress could reach the policy judgment the statutory text suggests it did." *Niz-Chavez*, 141 S. Ct. at 1486. Whether or not we would reach the same judgment ourselves, "no amount of policy-talk can overcome a plain statutory

command." *Id.* Policy arguments provide no reason to deviate from our interpretation of the statutory language.

IV

Applying our interpretation of section 30511(a), we conclude that neither claimant provided written notice of a claim to the vessel owner before filing suit in state court.

A

In the Alaska case, the claimant's attorneys sent three letters to the vessel owners, William and Jane Martz. But the first two letters discussed only Reagan Martz's potential liability for the accident, and Reagan Martz was not a vessel owner. Although the Martzes acknowledge that we must consider all three letters together, the first two add little to the third, which was Stone's letter of December 4, 2018. Like the district court, we therefore focus on that letter.

Stone's letter did not give notice of a claim against the vessel owners, William and Jane Martz. Specifically, it fell short because it did not state that Horazdovsky intended to seek a recovery from the Martzes. To be sure, the letter did outline a potential theory of liability whereby William and Jane Martz might be held liable for negligently entrusting the boat to Reagan. And its subject line—"Horazdovsky v. Reagan Martz, William and Jane Martz"—suggested the possibility of an adversarial proceeding. But the letter did not take a position on whether Horazdovsky intended to include William and Jane Martz in such a proceeding. To the contrary, it stated that Horazdovsky was "not yet certain whether William Martz or Jane Martz bear any responsibility" for the accident and wished to "avoid unnecessarily naming parties to a lawsuit." In other words, the letter equivocated on whether Horazdovsky intended to

assert a claim against William and Jane Martz. It did not demand anything from William and Jane Martz or assert an entitlement to any recovery from them. It therefore did not constitute "written notice of a claim" under section 30511(a).

Horazdovsky points out that when the Martzes' attorney responded to Stone's letter, he said that they had "not tendered this claim to any insurance companies." Based on that statement, Horazdovsky reasons that the Martzes "clearly understood" that Stone's letter "communicated written notice of a claim." But the statute creates an objective test, and what matters is what the written communication says, not how the recipient perceives it. Whatever the Martzes' attorney may have meant by the reference to a "claim," Stone's letter itself did not provide notice of a claim.

Because Stone's letter was not "written notice of a claim," Horazdovsky's state court complaint was the first written notice of a claim that the Martzes received. The Martzes filed their limitation-of-liability action two weeks after the state court action was filed, so the action was timely.

B

For similar reasons, we conclude that the evidence-preservation letter in the Hawaii case was also inadequate to start the running of the statute of limitations. That letter, too, did not state any intention to bring a claim against the vessel owners. It used legal terms such as "evidence," "spoliation," and "waiver," but it said only that an investigation was ongoing and that evidence related to T.T.'s death must be preserved. References to legal concepts without a definite statement of an intent to file suit—or to assert a legal right

in some other way—are insufficient to provide notice of a claim.

Although that determination is sufficient by itself to conclude that the letter did not start the running of the limitations period, there is also reason to doubt whether any claim in the letter would have been reasonably likely to be subject to limitation. While the district court was correct to note that any claim arising from T.T.'s death was likely to exceed the value of the vessel, our precedent requires that the claim be likely subject to limitation not only because of its value but also because it is covered by the Limitation Act. *See Jung Hyun Sook*, 632 F.2d at 102–04. The Limitation Act applies to claims arising out of a person's ownership of a vessel, including, in particular, claims for "loss, damage, or injury by collision," 46 U.S.C. § 30505(b); *see id.* § 30512, and it limits the owner's liability for the negligence of crew members and for the unseaworthiness of the vessel, *see In re Complaint of Messina*, 574 F.3d 119, 126–27 (2d Cir. 2009). It is not clear that it would extend to scuba diving accidents underwater that do not directly involve the vessel. *See* 46 U.S.C. § 30505(b); *cf. Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 645–46 (5th Cir. 2004) (scuba diving is not a traditional maritime activity).

The letter described T.T.'s death as occurring "while he was participating in a drift dive with your company, Island Divers Hawaii." It did not mention the involvement of any vessel in T.T.'s death. Even assuming that the letter could be read to give notice of a claim against Honu Watersports and Matthew Zimmerman, it would be a claim against them for operating the scuba diving experience that resulted in T.T.'s death—not for their ownership of the vessel. As T.T.'s estate and family concede, such a claim would not be subject to

limitation under the Limitation Act. *See* 46 U.S.C. § 30505(b).

In sum, Fish N Dive did not receive written notice of a claim under section 30511(a) until the state court complaint was filed. Fish N Dive filed its limitation-of-liability action within six months of the state court action, so the limitation-of-liability action was timely.

**REVERSED and REMANDED.**