[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15395
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 30, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00266-CV-WS-M

P.G. CHARTER BOATS, INC.,

Plaintiff-Cross-
Defendant-Appellant,

versus

JOHN S. SOLES,

Defendant-Cross-
Claimant-Appellee,

QUALITY INSPECTION SERVICES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(January 30, 2006)**

Before CARNES, HULL and PRYOR, Circuit Judges.

PER CURIAM:

P.G. Charter Boats, Inc., as owner of the vessel in issue, appeals the district court's order dismissing as untimely its limitation of liability action filed pursuant to the Limitation of Liability Act, 46 App. U.S.C. §§ 181-196. Under this Act, a vessel owner has six months to file an action to limit damages in a liability claim to the value of the vessel and its freight. After review, we conclude that the district court did not err in its determination that P.G.'s limitation of liability action was not timely filed within the requisite six-month period.[1]

## I. BACKGROUND FACTS

On March 14, 2002, John S. Soles, an employee of Quality Inspection Services, Inc. ("QIS"), was working on the NAV1, a spud barge, surveying gas lines in the Mississippi Sound off the coast of Alabama. A spud cylindrical anchoring device separated or broke and struck Soles in the head, causing him injuries to his spine, teeth and body. At the time of the accident, the NAV1 was owned by P.G. Charter Boats, Inc. ("P.G."). Richard W. "Pud" Gazzier was P.G.'s president and sole-shareholder.

---

[1] We review de novo a district court's dismissal pursuant to Rule 12(b)(6), applying the same standards applied by the district court. Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1089 (11th Cir. 2005).

Soles filed a lawsuit in Alabama state court against several named defendants, including his employer QIS, Gazzier and Gazzier Shipyard, Inc. The state-court complaint also named as defendants three fictitious corporations, stating that the defendant corporations' real names and addresses were then unknown to Soles, but that he would add them when they became known. The factual allegations of the state-court complaint alleged that Soles was working on "a vessel identified as NAV1 spud boat" and that the defendants owned, operated and/or controlled the NAV1 barge at the time of the accident and had caused his injuries through their negligence. Substantive allegations of the four-count complaint repeatedly referred to the defendants as the owners and/or operators of the NAV1.[2]

Soles served Gazzier with the state-court complaint on or about April 7, 2004. During discovery, Soles learned that P.G. was the owner of the vessel. On December 7, 2004, Soles moved to amend his state-court complaint to expressly name P.G. as a defendant.

On May 7, 2005, P.G. filed this limitation of liability action in the district

---

[2]The state-court complaint asserted claims of Jones Act negligence, general maritime negligence, unseaworthiness and maintenance and cure against all the defendants. Examples of Soles' collective reference to the defendants as owners and/or operators include paragraph 18 of Soles' complaint in which he claimed maintenance for the period of his disability "[b]y virtue of his service on the vessel owned, operated and/or controlled by the Defendants." In addition, paragraphs 20 and 21 of the complaint stated that the vessel, "which was owned, operated and/or controlled by the Defendants was unseaworthy" and that the "Defendants, as the owner and/or operator of the vessel owed [Soles] the absolute duty to keep and maintain the ship and equipment of the vessel in a seaworthy condition at all times."

3

court, naming Soles and QIS as claimants. Soles and QIS moved to dismiss P.G.'s action as untimely, arguing that P.G. had failed to file its limitation of liability action within six months of receiving written notice of his claim, as required by 46 App. U.S.C. § 185. The district court granted the motion, and this appeal followed.

## II. DISCUSSION

The Limitation of Liability Act, 46 App. U.S.C. § 181-196, limits a vessel owner's liability for any damages from a maritime accident to the value of the vessel and its freight. 46 App. U.S.C. § 183(a) (Supp. 2005). To limit liability under the Act, however, the vessel owner must file its petition in federal court within six months of receiving written notice of a claim, as follows:

> The vessel owner, within six months after a claimant shall have given to or filed with such owner written notice of claim, may petition a district court of the United States of competent jurisdiction for limitation of liability within the provisions of this chapter . . . .

46 App. U.S.C. § 185; see also Fed. R. Civ. P. Supp. F(1) (stating that a vessel owner may file a limitation of liability complaint "[n]ot later than six months after receipt of a claim in writing").

The sole issue on this appeal is when P.G. received "written notice of claim" within the meaning of § 185, thus triggering the running of the six-month filing period. If P.G. received notice when Soles served the original state-court complaint upon Gazzier on April 7, 2004, then P.G.'s limitation of liability action,

4

filed 13 months later on May 7, 2005, is untimely. However, if P.G. received notice only when, on December 7, 2004, Soles amended his state-court complaint to explicitly identify P.G. as a defendant, then P.G.'s action was timely-filed.

The Limitation of Liability Act does not define "written notice of claim." As noted by the district court, "[m]ost of the published cases concerning the timeliness of limitation complaints address the information that must be provided in a 'written notice.'" In re Complaint of P.G. Charter Boats, Inc., 385 F. Supp.2d 1243, 1244 (S.D. Ala. 2005). Courts have developed two similar tests to determine whether a writing contains all the information needed to constitute a "written notice of claim" under § 185. Paradise Divers, Inc. v. Upmal, 402 F.3d 1087, 1090 (11th Cir. 2005). Under one test, notice is sufficient if "it informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation." Id. Under this test, the notice must "reveal a 'reasonable possibility' that the claim made is one subject to limitation." Id. (quoting In re Complaint of McCarthy Bros. Co./Clark Bridge, 83 F.3d 821, 829 (7th Cir. 1996)). The second test requires that the writing: "(1) demand a right or supposed right; (2) blame the vessel owner for any damage or loss; and (3) call upon the vessel owner for anything due to the claimant." Id.

As the district court noted, P.G. does not argue that the original state-court

complaint failed to provide the information necessary to satisfy these tests. In re Complaint of P.G. Charter Boats, Inc., 385 F. Supp.2d at 1244. Nor does P.G. claim that Gazzier, as P.G's president and sole-shareholder, was not authorized to receive written notice on P.G.'s behalf. Rather, P.G. contends that it did not have notice that Soles was asserting a claim against P.G. because the original complaint did not explicitly name P.G. as the vessel owner. We disagree.

Soles' original state-court complaint clearly asserted claims against the NAV1's owner. Furthermore, the complaint named three fictitious corporations and explained that the names and addresses of these corporations were at present unknown, but would be substituted when they were discovered. When Gazzier received Soles' state-court complaint, the complaint's allegations made it clear to Gazzier that Soles was asserting claims against the owner of the NAV1. Further, Gazzier was the president and sole shareholder of the owner of the NAV 1. Thus, the original complaint adequately gave notice to the vessel owner that Soles was making a claim against the vessel owner. Therefore, P.G. received "written notice of claim" for purposes of § 185 when Gazzier was served with the original state-court complaint asserting claims against the NAV1's owner.

In addition, P.G. contends that, in the original state-court complaint, Soles sued Gazzier and Gazzier Shipyards as the owners of the vessel and therefore

6

"sued the wrong party." However, the complaint was clear that Soles was suing the vessel owner, the complaint referred to the defendants, including the fictitious corporations, collectively as the NAV1's owners, operators and/or controllers, and was served on Grazzier, who was the sole shareholder and president of the vessel owner. Thus, as aptly summarized by the district court, this combination of circumstances resulted in adequate written notice to P.G.,:

> The difficulty, as the claimants note, is that Soles' complaint named fictitious parties as defendants and identified them as including the owner of the Vessel. This complaint was received by Richard Gazzier and Gazzier Shipyard, one of whom was the sole shareholder of P.G. By suing fictitious parties as the owner of the Vessel, Soles in fact sued the right party, and by delivering the complaint to the owner's sole shareholder, he provided the owner with the written notice required by the statute.

Id. at 1245 (citation omitted).[3]

Furthermore, the two cases P.G. cites to support its contention that it did not receive notice are inapposite. The first case, In re Complaint of Lady Jane, Inc., 818 F. Supp. 1470 (M.D. Fla. 1992), involved a dispute between Jane Steen and a boat yard. Steen had purchased the Lady Jane, a shrimping boat, and then transferred ownership to Lady Jane, Inc., of which she was sole shareholder.

Steen entered into an oral contract for repairs to the Lady Jane. However,

_____

[3]We emphasize that our determination that P.G. received notice of Soles' claims against the vessel owner when Gazzier was served is highly fact-specific, turning on the unique set of circumstances presented.

7

Steen failed to inform the boat yard that she was acting on behalf of Lady Jane, Inc. when contracting for the repairs. While in the boat yard, the Lady Jane was destroyed by fire. Steen filed a limitation of liability action in her own behalf. Two months later, the boat yard sued Steen individually for failure to pay for services rendered and for failure to remove the burned out hulk of the Lady Jane. The boat yard did not assert claims against the vessel owner.

Almost a year after the boat yard filed suit, Steen sought to amend her limitation complaint to add Lady Jane, Inc. The boat yard argued that Lady Jane, Inc. was time-barred from seeking protection from the Limitation of Liability Act. The district court disagreed, concluding that, because the boat yard's complaint had asserted claims against only Steen individually and not against Lady Jane, Inc., Lady Jane, Inc. had "never been on notice of a claim against it" and § 185's six-month filing period had not begun to run. Id. at 1474.

In contrast, Soles' original state-court complaint explicitly and unambiguously asserted claims against the owner of the NAV1, although it did not identify the owner by name. In other words, the very thing missing from the complaint in Lady Jane – a claim asserted against the vessel owner – was present in Soles' complaint. Therefore, Lady Jane undermines rather than supports P.G.'s argument.

8

In the second case, <u>Billiot v. Dolphin Services, Inc.</u>, 225 F.3d 515 (5th Cir. 2000), the claimant sued Dolphin Services, the charterer of the barge on which he was injured, but misidentified the barge. Dolphin Services advised the claimant that, at the time of the accident, it had not chartered the barge identified in the complaint. Nonetheless, the claimant continued to seek discovery from Dolphin Services for the misidentified barge and sought to amend its complaint to identify the correct barge six months after the complaint had been filed. Under these circumstances, the Fifth Circuit concluded that the charterer did not receive a written notice of the claims against it until the claimant amended his complaint to properly identify the barge. Crucial to the Fifth Circuit's conclusion was the fact that the original complaint identified a barge over which Dolphin Services had no control and that Dolphin Services was entitled to rely on that complaint.

Here, Soles did not misidentify the vessel on which he was injured. Soles correctly identified the NAV1, and there is no dispute that P.G. was the owner of the NAV1. Therefore, <u>Billiot</u> is likewise inapplicable.

For all of these reasons, we conclude that Soles gave written notice as of April 7, 2004, of its claims against the vessel owner to that owner's president and sole-shareholder and, thus, P.G.'s limitation of liability action, filed on May 7, 2005, seven months after the six-month filing period had expired, was untimely.

9

The district court did not erred in dismissing P.G.'s action.[4]

**AFFIRMED**.

---

[4]P.G. also argues that the district court improperly applied Alabama Rule of Civil Procedure 9(h), Alabama's fictitious party rule, rather than federal law in dismissing its action. This assertion is wholly without merit. In fact, the district court merely noted in a footnote that Soles appeared to have complied with this rule in its state court pleadings, but explained that this fact did not affect its ruling, which was based on federal law, as follows:

> Although it appears that Soles' usage of fictitious defendants satisfied state procedural rules, see Ala. R. Civ. P. 9(h), the result would not change if it did not, because the question is the adequacy of notice to P.G. under federal law, not the adequacy of pleading under Alabama law.

In re Complaint of P.G. Charter Boats, Inc., 385 F. Supp.2d at 1245 n.3.