[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 17-11961

————————————————

D.C. Docket No. 8:15-cv-01136-MSS-TGW

ORION MARINE CONSTRUCTION, INC.,
as owner of Barges M-1801, M-1802,
M-1701 and M-1402, their engines, tackle,
appurtenances, equipment, etc., in a cause
of exoneration from or limitation of liability,

Plaintiff - Appellant,

versus

ELIZABETH CARROLL,

Defendant,

DANIEL F. BOWEN, et al.,

Claimants,

MARK DAWSON,
CHRISTINE M. DAWSON,

Claimants - Appellees.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(March 20, 2019)

Before MARCUS, NEWSOM, and ANDERSON, Circuit Judges.

NEWSOM, Circuit Judge:

This admiralty appeal requires us to navigate uncharted waters in order to determine what constitutes sufficient notice of a claim under the Shipowner's Limitation of Liability Act, 46 U.S.C. §§ 30501, *et seq.* The Act establishes a procedure by which a shipowner can limit its liability for certain claims involving one of its vessels to the value of the vessel plus its then-pending freight. *Id.* § 30505(a). Importantly here, to invoke the Act's protection, the shipowner must bring a limitation-of-liability action in federal court "within 6 months after a claimant gives the owner written notice of a claim." *Id.* § 30511(a). If the owner meets the six-month statutory deadline, and then creates a qualifying limitation "fund," all related lawsuits against the owner "shall cease," leaving the claimants to pursue their rights in the limitation proceeding. *Id.* § 30511.

In connection with a large bridge-construction project in Florida, Orion Marine Construction used four barges to drive piles into the seabed. After numerous local residents complained that their homes had been damaged by vibrations caused by the barges' pile-driving activities, Orion filed a limitation action under the Act. Claimants Mark and Christine Dawson moved to dismiss Orion's suit, arguing that Orion had received adequate notice of the claims against it more than six months before it filed, that the action was therefore time-barred,

2

and, accordingly, that the district court lacked subject matter jurisdiction.  The district court agreed and granted the Dawsons' motion to dismiss.  We reverse.

This appeal presents several interesting and important questions about the meaning and operation of the Act:

*First*, does § 30511(a)'s six-month filing deadline erect a jurisdictional barrier to suit, as the Dawsons contend and the district court concluded?  We hold that it does not, and that it is instead (like most timely-filing requirements) a non-jurisdictional claim-processing rule.

*Second*, what constitutes "written notice of a claim" within the meaning of § 30511(a)?  We hold that in order to trigger the six-month filing period, a claimant (not someone else) must provide the shipowner or its agent (not someone else) with written (not oral) notice that reveals a "reasonable possibility" that his claim will exceed the value of the vessel(s) at issue.

*Third*, does a shipowner incur a duty to investigate known or potential claims immediately upon receipt of a claimant's notice, as the district court concluded?  We hold that it does not, and that the duty to investigate arises only if the notice reveals the required "reasonable possibility."

*Finally*, did Orion receive the statutorily required written notice—revealing a reasonable possibility of claims that would exceed the value of its barges—more

3

than six months before it filed its limitation action?  We hold that it did not, and, accordingly, that its suit was timely filed.

**I**

**A**

The pertinent facts here are undisputed.  In 2011, Orion—a company specializing in marine construction—contracted with the Florida Department of Transportation (FDOT) to rebuild the Pinellas Bayway Bridge in Pinellas County, Florida.  As part of the project, Orion's barges were used to drive concrete piles into the bay floor.  Hundreds of local residents complained that the vibrations created by Orion's pile-driving damaged their surrounding properties, and 247 of them eventually filed formal claims in the limitation action that gave rise to this appeal.

Early on, though, the claims trickled in slowly.  Between March 2012 and June 2014, only nine residents lodged complaints—typically alleging cracks in their homes, patios, and driveways, or leaks in their pools—with either Orion, FDOT, or Orion's third-party administrator, FARA Insurance.  We focus here on these first nine claimants because they (alone among the 247) made their complaints before November 11, 2014—and thus, critically, more than six months before Orion filed suit on May 11, 2015.

In response to a few of these early complaints, Orion dispatched an investigator to assess the alleged damage. Some of the cracks that he observed, he reported, were "old," and others were "minor" and "cosmetic." As for one of the reported pool leaks, he found that it was "just a crack in a PVC pipe." Orion installed vibration monitors at two residents' homes; the numbers came back "low" at one and "very, very low" at the other.

According to Orion, around December 2014 or January 2015 it began to receive property-damage claims "in bulk" from a public adjuster, beginning with 11 additional complaints during those two months alone. This flood of new claims, Orion says, prompted it to file its limitation action on May 11, 2015.

**B**

Mark and Christine Dawson—who lodged one of the original nine complaints—moved to dismiss Orion's action on the ground that it was untimely and, therefore, that the district court lacked subject matter jurisdiction. Orion's action was time-barred, they asserted, because Orion had received "written notice of a claim" within the meaning of 46 U.S.C. § 30511(a) prior to November 11, 2014—and thus earlier than the statutorily specified six-months mark before it filed. Orion responded that none of the nine original claims provided it with proper notice under the Act because (1) a number of the complaints were not "written," as the Act requires, and (2) in any event, the complaints failed to reveal

5

a "reasonable possibility" that the claims would exceed the aggregate value of the four vessels used during the bridge construction.

Because it "lacked sufficient factual information" about which of the original nine claims were made when, to whom, and in what form, the district court denied the Dawsons' motion without prejudice and ordered the parties to conduct limited discovery on the timeliness issue. Discovery revealed a hodge-podge of formal and informal oral and written complaints, which were submitted to various employees at Orion, FDOT, and FARA. When FDOT received complaints, it memorialized them in written summaries or emails, which it then forwarded to Orion. FARA typically responded to the complaints that it received by acknowledging them, disclaiming any assumption of coverage, advising that construction was ongoing, requesting copies of—or that the claimant maintain records of—photos and repair quotes, and agreeing to investigate further. In an effort to impose some order—and to facilitate our own analysis—we will group the complaints into the following categories: (a) oral complaints that were (i) made to and memorialized in writing by Orion or (ii) made to and memorialized in writing by FARA or FDOT and then forwarded to Orion; and (b) written complaints that were (i) made to FARA and then forwarded to Orion or (ii) made to FDOT and then forwarded to Orion.

Based on the information obtained during discovery, Orion emphasized that none of the nine original claimants had provided "written notice" to it and that only four had provided written notice to anyone—two to FDOT and two to FARA. Moreover, Orion said, none of the nine presented specific damage computations (in any form) before November 11, 2014. Estimates that Orion received after the completion of the bridge revealed the total amount of claimed damages by written notice to be $164,901.10 and the total from all pre-November 11, 2014 notices (both oral and written) to be $330,046.22.[1] Because neither number exceeds the aggregate value of the four barges used during the construction—$1,258,217.00—Orion contended that the nine original claimants' notices didn't start the six-month clock on its obligation to file a limitation action. Rather, Orion reiterated, "[i]t was not until a public adjuster began signing up claimants in droves in December 2014 . . . that [it] was reasonably on notice the claims may exceed the value of its vessels." Accordingly, Orion argued, its May 11, 2015 filing fell comfortably within the six-month period prescribed by the Act.

## C

Following discovery, the Dawsons renewed their motion to dismiss, reiterating that because Orion's action was untimely under § 30511(a), the district

---

[1] Orion explained that because two of the claimants never filed claims in the limitation action or made specific demands, their estimated damages remain unknown.

7

court lacked subject matter jurisdiction over the case.  The district court granted the motion and dismissed Orion's complaint, concluding that "Orion was aware or should have been aware that claims against it would likely exceed the value of the vessel[s] . . . certainly no later than November 11, 2014," and, accordingly, that its limitation action filed on May 11, 2015 was "untimely and must be dismissed for lack of jurisdiction."

In so holding, the district court admitted that it was "[w]ithout any case law directly analogous to the case at hand" and, accordingly, that it had to "extrapolate from the available precedent to determine whether the nine [original] complaints constituted notice."  In so doing, it considered all nine pre-November 11, 2014 notices "in the aggregate" and the sufficiency of those communications "as a whole."  Significantly, as to the form of notice, the district court concluded "that both the written complaints Orion received directly from the [c]laimants or by forward from the FDOT, and the memorialized oral complaints Orion received [either directly or from FDOT or FARA] constitute 'written' notice under the Act."  The district court further reasoned that the complaints that Orion received before November 11, 2014 triggered a duty—which it found Orion breached—to investigate any "potential" additional claims that might be asserted by owners of other properties in the surrounding area.

8

Orion timely appealed to this Court, arguing that the district court erred in concluding (1) that § 30511(a)'s six-month filing requirement is jurisdictional and (2) that the nine original claimants provided adequate notice under the Act. In support of the latter contention, Orion argued that the district court erred by holding (a) that even oral complaints, if later memorialized, satisfy the Act's "written notice" requirement, (b) that the nine pre-November 11, 2014 notices identified "limitable" claims even though the record revealed no reasonable possibility that the alleged damages (no matter how measured) would exceed the value of the barges used during construction, and (c) that Orion was obligated to investigate the possibility of additional claims immediately upon receipt of the initial complaints.

We consider those issues in turn.

## II

We begin, as we must, with jurisdiction. A number of courts—including at least two of our sister circuits—have held, as the district court did here, that § 30511(a)'s six-month time bar constitutes a jurisdictional limitation. *See, e.g.*, *In re Eckstein Marine Serv., L.L.C.*, 672 F.3d 310, 315 (5th Cir. 2012); *Cincinnati Gas & Elec. Co. v. Abel*, 533 F.2d 1001, 1003 (6th Cir. 1976). We disagree.

Not long ago, in *Secretary v. Preston*, 873 F.3d 877 (11th Cir. 2017), we had occasion to survey the Supreme Court's recent precedent outlining the distinction

between true jurisdictional limitations and non-jurisdictional "claim-processing" rules—and, in particular, concerning the jurisdictional-ness of statutory time bars. *See id*. at 881–82.  What we said there—about ERISA's six-year statute of repose—applies here pretty much foursquare.  As a general matter, we observed that in recent years, "the Supreme Court has set out to impose some discipline on the previously slippery use of the term 'jurisdictional.'"  *Id*. at 881.  "In so doing," we recounted, "the Court has emphasized—repeatedly—that statutory limitation periods and other filing deadlines 'ordinarily are not jurisdictional' and that a particular time bar should be treated as jurisdictional 'only if Congress has clearly stated that it is.'"  *Id*. (quoting *Musacchio v. United States*, 136 S. Ct. 709, 716–17 (2016)).  Establishing the required clear statement, we explained, is a tall task—a party must "demonstrat[e] that 'traditional tools of statutory construction . . . plainly show that Congress imbued a procedural bar with jurisdictional consequences.'"  *Id*. (quoting *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1632 (2015)).

More particularly, the considerations that we emphasized in *Preston* in concluding that ERISA's statute of repose is not jurisdictional lead us to the same conclusion about § 30511(a).  First, we observed that the language of the provision there at issue "d[id] not 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'"  *Id*. at 882 (quoting *Arbaugh v. Y & H Corp.*,

10

546 U.S. 500, 515 (2006)).  "When," we said, "a statute 'speaks only to a claim's timeliness, not to a court's power,' it should be treated as non-jurisdictional."  *Id*. (quoting *Kwai Fun Wong*, 135 S. Ct. at 1632).  Just so here.  Section 30511(a)'s language—"[t]he action must be brought within 6 months"—does not "plainly show that Congress imbued" the deadline "with jurisdictional consequences." *Kwai Fun Wong*, 135 S. Ct. at 1632.  Rather, it "reads like an ordinary, run-of-the-mill statute of limitations, spelling out a litigant's filing obligations without restricting a court's authority."  *Id.* at 1633 (internal quotation marks and citation omitted).  In short, § 30511(a)'s text reveals a filing deadline of the sort that the Supreme Court has consistently called a "quintessential claim-processing rule[]." *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011).

Second, and relatedly, we stressed in *Preston* that Congress's "use of mandatory language"—there, "No action may be commenced"—does not alone impart jurisdictional significance.  "The Supreme Court," we noted, "has flatly 'rejected the notion that all mandatory prescriptions, however emphatic, are . . . properly typed jurisdictional.'"  873 F.3d at 882 (quoting *Henderson*, 562 U.S. at 439).  Not even sweeping proscriptions like "no action shall be brought," *Jones v. Bock*, 549 U.S. 199, 220 (2007), and "shall be forever barred," *Kwai Fun Wong*, 135 S. Ct. at 1633–38, will do the trick.  *See Preston*, 873 F.3d at 882.  Rather, we summarized, "[u]nder clear Supreme Court precedent, it is only an express

11

reference to jurisdiction, not firmness more generally, that counts." *Id*. Section 30511(a)'s mandatory phrasing, therefore—"The action must be brought within 6 months"—provides no basis for inferring a jurisdictional limitation.

Finally, just as in *Preston*, "[s]tatutory context"—and in particular, the location of the time bar within the statute's architecture—confirms § 30511(a)'s "non-jurisdictional character." *Id*. Here, as there, Congress situated the filing period among provisions that describe the standards and procedures that govern the cause of action—and (well) away from those that allocate jurisdiction. Congress, that is, didn't write the six-month bar into 28 U.S.C. § 1333(1), which gives federal district courts original jurisdiction over "any civil case of admiralty or maritime jurisdiction." Instead, it placed the time limit in Chapter 305 of Title 46, which is titled "Exoneration and Limitation of Liability" and which prescribes the mechanics of shipowner suits—liability caps, apportionment, personal-injury and wrongful-death actions, etc. (Tellingly, § 30511(a)'s six-month deadline is repeated in Rule F(1) of the Supplemental Admiralty and Maritime Claims Rules, which are located in an addendum to the Federal Rules of Civil Procedure.) The fact that here—again, just as in *Preston*—Congress "separat[ed]" the filing deadline from the jurisdictional grant fortifies our determination that § 30511(a)'s six-month "time bar is not jurisdictional." *Preston*, 873 F.3d at 882 (quoting *Kwai Fun Wong*, 135 S. Ct. at 1633).

"Because we find no clear textual indication" that § 30511(a)'s six-month time bar "was intended to limit courts' subject matter jurisdiction," *id*.—because, in short, it does nothing "special, beyond setting an exception-free deadline," *Kwai Fun Wong*, 135 S. Ct. at 1632—we hold that the provision is an ordinary non-jurisdictional claim-processing rule, and that the district court erred in concluding otherwise.[2]

\* \* \*

Where, you might ask, does that leave us procedurally?  Fair question. Given the peculiarities of this particular case, the proper course, we think, is to evaluate the merits of the parties' contentions—about whether the nine original (*i.e.*, pre-November 11, 2014) claimants gave Orion notice sufficient to commence

---

[2] We are untroubled by the fact that our holding in this respect places us athwart the consensus of courts to address § 30511(a)'s jurisdictional status.  Many of the decisions holding—or assuming, really—that § 30511(a) limits courts' subject matter jurisdiction predate the Supreme Court's recent effort to "bring some discipline" to the use of the term "jurisdictional." *Henderson*, 562 U.S. at 435.  Moreover, and in any event—and with respect—we think that many of the § 30511(a) decisions represent the sort of "drive-by jurisdictional rulings," *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 161 (2010), that the Supreme Court has condemned. *See, e.g.*, *Cincinnati Gas*, 533 F.2d at 1003 (relying on a 1939 district court decision for the proposition that if a deadline is a condition precedent then it must be jurisdictional—a mechanical rationale that the Supreme Court has since rejected); *Complaint of Tom-Mac, Inc.*, 76 F.3d 678, 682 (5th Cir. 1996) (assuming that § 30511(a)'s predecessor's filing deadline is jurisdictional without elaboration or citation to authority); *In re Waterfront License Corp.*, 231 F.R.D. 693, 699 (S.D. Fla. 2005) (same); *In re Eckstein*, 672 F.3d at 315 & n.11, n.12 (relying on *Cincinnati Gas, Complaint of Tom-Mac*, and *In re Waterfront License Corp.*, as well as an earlier Fifth Circuit decision holding the Federal Tort Claims Act's statute of limitations is jurisdictional—a decision that the Supreme Court has since expressly abrogated); *In re Complaint of RLB Contracting, Inc.*, 773 F.3d 596, 601 & n.5, 602 & n.14 (5th Cir. 2014) (relying without analysis on *In re Eckstein*).

13

§ 30511(a)'s six-month clock—under a summary-judgment standard. For reasons just explained, despite its label, the Dawsons' Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is more accurately considered a Rule 12(b)(6) motion to dismiss for failure to state a claim. Because the district court considered materials outside the pleadings in deciding the Dawsons' motion, though—and indeed, affirmatively directed discovery—that motion may properly be converted into a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Given that (1) the parties here conducted discovery on the timeliness issue, (2) the Dawsons alternatively framed their motion as one for summary judgment and Orion maintained that it should have been reviewed under a summary-judgment rubric, (3) the parties agree (and have reiterated before us) that there are no disputed material facts, and (4) the parties further agree that the timeliness issue is squarely presented on appeal, we feel confident proceeding to decide the merits under a summary-judgment standard, reviewing the district court's decision de novo. *Cf. Miller v. Herman*, 600 F.3d 726, 731–33 (7th Cir. 2010) (confronting a similar "procedural hiccup" and opting to treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion, which was properly converted to, and thus reviewed as, a summary-judgment motion).

14

## III

Our consideration of the merits comprises several issues, which we will address in turn. First, which of two competing doctrinal tests—which we have acknowledged but have never (until now) had to choose between—governs the determination whether a claimant's notice is sufficient under § 30511(a)? Second, what forms and methods of notice qualify as "written notice" within the meaning of the Act? And third, what does it mean for a claimant's notice to reveal—as we hold it must in order to start the statutory clock and trigger a duty to investigate additional claims—a "reasonable possibility" that his claim will exceed the value of the shipowner's vessel(s)?

## A

Because the Act doesn't define "written notice of a claim," courts have been left to formulate tests to determine whether a claimant's notice suffices under § 30511(a). Under one, which originated in the Second Circuit's decision in *Doxsee Sea Clam Co. v. Brown,* "[n]otice will be sufficient if it informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation." 13 F.3d 550, 554 (2d Cir. 1994) (internal citations omitted). The Seventh Circuit has since adopted the *Doxsee* standard with one important refinement—elaborating on the word "may," that court held that "the written notice of a claim must reveal a 'reasonable possibility' that the claim made

15

is one subject to limitation." *In re Complaint of McCarthy Bros. Co./Clark Bridge,* 83 F.3d 821, 829 (7th Cir. 1996) (citing *Complaint of Tom-Mac,* 76 F.3d at 683). The competing test requires only that the claimant's notice (1) demand a right or supposed right, (2) blame the vessel owner for any damage or loss, and (3) call on the vessel owner for anything due. *See Rodriguez Moreira v. Lemay,* 659 F. Supp. 89, 91 (S.D. Fla. 1987).

We have twice noted the existence of these two tests—first in *Paradise Divers, Inc. v. Upmal*, 402 F.3d 1087 (11th Cir. 2005), and then, a year later, in *P.G. Charter Boats, Inc. v. Soles*, 437 F.3d 1140 (11th Cir. 2006). On both occasions, we found it unnecessary to choose between them. The district court here did the same thing, concluding that the claimants' notices satisfied both. But for reasons that we'll explain, the distinction between the two standards actually matters here. Although we have described these two tests as "similar," *Paradise Divers*, 402 F.3d at 1090, there is one crucial difference: What we'll call the "*Doxsee*/*McCarthy* test" entails an amount/value element that the "*Moreira* test" does not—namely, it requires that the notice reveal a "reasonable possibility" that the claim will exceed the value of the offending vessel(s). No one—not even Orion—disputes that the claimants' notices would meet the *Moreira* standard. Instead, Orion contends that the claimants' notices fail the *Doxsee*/*McCarthy* test because the notices (even considered in the aggregate) failed to convey a

16

reasonable possibility that the claims' total value would exceed the value of its barges.

With the lines thus drawn—and because we agree that Orion can't win under *Moreira* but has a fighting chance under *Doxsee*/*McCarthy*—the time has finally come for us to decide which standard to apply. The answer, we think, is clear. For starters, the *Doxsee*/*McCarthy* test is the most widely-accepted among our sister circuits—in addition to the Second and Seventh Circuits, the Fifth has also embraced it, *see In re Eckstein*, 672 F.3d at 317—and indeed, it has been described as the "most authoritative." *Paradise Divers*, 402 F.3d at 1090 (quoting *McCarthy Bros.,* 83 F.3d at 829). The *Moreira* test, by contrast, while perhaps once "found in many district court cases," *id.*, does not appear to have been adopted by any circuit court, and generally seems to have fallen into desuetude since *Doxsee* was decided.

More substantively, the key distinction between the two tests—namely, that *Doxsee*/*McCarthy* incorporates an amount/value element (in the form of the "reasonable possibility" showing) that *Moreira* doesn't—underscores the superiority of the former. *Doxsee*/*McCarthy*'s reasonable-possibility requirement serves the six-month limitation period's purpose by encouraging shipowners to act promptly while at the same time eliminating consideration of small-value cases unlikely to benefit from the Act's protection. In contrast, by requiring a shipowner

17

to initiate limitation proceedings regardless of the amount likely at issue, the

*Moreira* test would (1) "obligate a shipowner to go to the expense of posting

security and taking the other steps necessary to commence a limitation proceeding"

even when the claims indicate that doing so would be "wholly unnecessary," (2)

"encourage claimants to understate the amount of their damage in the hope that the

shipowner would be misled into not filing a timely petition for limitation," and (3)

"serve no purpose other than to clog the courts with unneeded petitions and cause

great expense to shipowners without in any way benefiting claimants." *Complaint*

*of Morania Barge No. 190, Inc.*, 690 F.2d 32, 34 (2d Cir. 1982).

For all of these reasons, we hold that the *Doxsee*/*McCarthy* test is the

controlling standard for determining the sufficiency of notice under § 30511(a).

**B**

That leads us to the question whether claimants' notices here satisfied the

*Doxsee*/*McCarthy* standard—which, as we have described it before and adopt it

today, requires a claimant to give the shipowner written notice that reveals a

"reasonable possibility" of a claim that exceeds the value of the vessel(s). *See P.G.*

*Charter Boats*, 437 F.3d at 1143.

Orion argues that claimants' notices fail this test (1) because some of them

were not "written" at all, as § 30511(a) plainly requires, and (2) because, in any

event, the notices—even including those made orally—"never demonstrated a

18

reasonable possibility of a claim exceeding the value of the vessel, and to this day, even added together, Claimants' filed claims do not." Br. for Appellant at 21. The Dawsons, by contrast, contend that the district court properly determined that the pre-November 11, 2014 claims—when considered in the aggregate and including the oral complaints that were later reduced to writing—provided notice sufficient to allow Orion to evaluate its overall exposure, and thus triggered Orion's duty to investigate and to file suit within six months.

**1**

First things first: Which of the pre-November 11, 2014 complaints qualify as "written notice" within the meaning of the Act? And more particularly, what of the district court's conclusion "that both the written complaints Orion received directly from the Claimants or by forward from the FDOT, and the memorialized oral complaints Orion received [either directly or from FDOT or FARA] constitute 'written' notice under the Act"? Put simply, in so holding, the district court erred. Section 30511(a) couldn't be clearer about what we have called its "writing" requirement. *See P.G. Charter Boats*, 437 F.3d at 1143. The statute says, in no uncertain terms, that the six-month filing period begins to run when "a claimant gives the owner written notice of a claim." 46 U.S.C. § 30511(a). Broken down into its constituent parts, that straightforward provision requires that the *claimant*

19

(not someone else) give the *owner* (not someone else) *written* (not oral) notice of his claim.

As noted earlier, the complaints lodged by the original nine claimants can be grouped into the following categories: (a) oral complaints that were (i) made to and memorialized in writing by Orion or (ii) made to and memorialized by FARA or FDOT and then forwarded to Orion; and (b) written complaints that were (i) made to FARA and forwarded to Orion or (ii) made to FDOT and forwarded to Orion. We will consider each type of complaint in turn.

**a**

As an initial matter, we think it clear—contrary to the district court's determination—that the memorialized oral complaints don't qualify.

The complaints that were made orally to Orion and that it later reduced to writing—those are easy. No reasonable interpretation of § 30511(a)'s text—requiring that the "claimant give[] the owner written notice"—could include a vessel owner's *own* written notes recording a claimant's oral report. In that circumstance, no "written notice" has been provided at all—by anyone, to anyone. What about the complaints that were made orally to FARA and/or FDOT, which they then memorialized and forwarded to Orion? Closer, but still no cigar. In that circumstance, Orion might have received written notice from someone, but it

didn't receive written notice from a *claimant*, as § 30511(a) expressly requires.[3]

The fact that someone, somewhere has reduced an oral communication to writing

doesn't transform an invalid oral notice into a valid written notice under the Act.[4]

**b**

What, though, about the *written* notices provided by the claimants to FARA

and/or FDOT, which were then forwarded to Orion? Much closer. The Second

Circuit has held that "[i]t is settled that a notice of claim may be received by an

agent of the vessel owner," *Doxsee*, 13 F.3d at 553, and that seems right to us as a

matter of hornbook agency law. *See, e.g.*, Restatement (Third) of Agency § 5.03

---

[3] The district court suggested that FDOT was a "potential claimant" by way of the indemnification provision in Orion's contract—and therefore, that the oral claims memorialized by FDOT could constitute written notice by a claimant. That is incorrect. The Supreme Court has made clear that contracts entered into by vessel owners are personal and not subject to the Act. *See, e.g.*, *Am. Car & Foundry Co. v. Brassert*, 289 U.S. 261, 264 (1933); *Richardson v. Harmon,* 222 U.S. 96, 106 (1911). Accordingly, no claim made by FDOT against Orion pursuant to their contract would be subject to limitation, and FDOT could never be a "claimant" in a limitation action.

[4] In support of its conclusion that the memorialized oral complaints should be considered, the district court cited only the magistrate's report and recommendation in *Paradise Divers* for the proposition that "although a notice of claim must obviously be in writing, the notice need not take any particular form." Doc. 634 at 16 (quoting *In re Paradise Divers, Inc.*, No. 03-10021 CIV, 2003 WL 25731109, at *4 (S.D. Fla. Nov. 9, 2003)). But that statement doesn't support the district court's position. Rather, the *Paradise Divers* R&R sought only to clarify what other circuits have expressly held—that *informal* written notice, such as a letter sent by a claimant or his attorney, will suffice under the Act in lieu of a formal complaint. *See, e.g.*, *RLB Contracting*, 773 F.3d at 603; *Doxsee,* 13 F.3d at 554. The Act's plain text still requires that the *claimant* provide *written* notice to the *owner*. 46 U.S.C. § 30511(a).

The district court also emphasized that Orion acted on the memorialized oral complaints—and thus, the theory presumably goes, had actual knowledge of them. But even actual knowledge of alleged damage is no substitute for the *written* notice required by the Act. *See, e.g.*, *Moreira*, 659 F. Supp. at 91.

21

(Am. Law Inst. 2006) (observing that, as a general rule, "[f]or purposes of a principal's legal relations with a third party, notice of a fact that an agent knows or has reason to know is imputed to the principal if knowledge of the fact is material to the agent's duties to the principal"). And for that matter, even Orion admits that "*written* notice provided to an agent might be imputed to the principal." Reply Br. for Appellant at 6. So the sufficiency of the written notices sent to FARA and/or FDOT hinges on whether they were Orion's agents.

It seems reasonably clear to us—and no one here disputes—that FARA was Orion's agent for claims-processing purposes. FARA had at the very least apparent—and probably even actual—authority to act on Orion's behalf; indeed, it was hired specifically to assist Orion with the adjustment of claims. *See* Restatement (Third) of Agency §§ 3.01, 3.03 (describing actual and apparent authority). Accordingly, any claimant who gave written notice to FARA, as Orion's agent, satisfied § 30511(a)'s writing requirement.

Those who gave written notice only to FDOT (which the claimants describe as Orion's "project partner") stand on different footing. So far as we can tell, the record contains no evidence that Orion—as the would-be principal—made any "manifestation" that would have clothed FDOT with either actual or apparent authority to accept claim notices on Orion's behalf. *See id.* §§ 3.01, 3.03 (emphasizing that the "manifestation" that gives rise to an agent's authority must

22

emanate from the principal).  Perhaps not surprisingly, then, the record demonstrates that when FDOT received complaints, it simply—and consistently— redirected them to Orion rather than attempting to process them.[5]  Because FDOT (unlike FARA) had no authority to act as Orion's agent for claims-processing purposes, written notice provided to FDOT didn't meet § 30511(a)'s written-notice-to-owner requirement.

* * *

So to sum up, the district court erred in holding that all of the claims—oral and written, and to whomever communicated—constituted "written notice" to the "owner" under § 30511(a).  Complaints delivered orally and later reduced to writing (by anyone) don't qualify.  Nor do the written complaints submitted to FDOT, which had no authority to act as Orion's claims-processing agent.  Only the written complaints submitted in writing to Orion—either directly or through FARA, its agent—satisfy § 30511(a)'s "written notice" requirement.

**2**

Having said that, even if we were to consider—as the district court erroneously did—the oral and written complaints lodged by all nine of the pre-

---

[5] In fairness, the record does reveal one instance in which an FDOT employee sent a copy of a property-damage form to a claimant with instructions that the claimant complete the form and copy her on the submission "so that [she could] make sure Orion receive[d] the documentation." Dispositively, though, that "manifestation"—assuming it was one—wasn't made by Orion, which (as explained in text) agency law requires in order to establish apparent authority.

November 11, 2014 claimants, their notices still fail the *Doxsee*/*McCarthy* test because they don't reveal a "reasonable possibility" that the claims, even considered (as the district court put it) "in the aggregate," would exceed the value of Orion's barges.[6]  Here's why.

**a**

It is undisputed that the four Orion barges involved in the pile-driving were valued, collectively, at no less than $1,258,217.00.  The question, then, is whether the nine original claimants' notices revealed a reasonable possibility that their claims, collectively, would exceed that amount.  It is clear to us that they didn't.

Let's first review the sort of damage that the claimants alleged.  In general, the homeowners complained that Orion's pile-driving had caused (1) external cracks in their homes' walls, chimneys, porches, and driveways, (2) internal cracks

---

[6] Although there is nothing in the Act explicitly stating that the value of claims should be considered cumulatively, we will assume for present purposes that it is permissible to do so, as no one here seems to dispute that we may aggregate the value both of individual property owners' claims and of Orion's four barges for purposes of determining whether the claimants' notices reveal the required "reasonable possibility."  We do note a distinction between this case and the Fifth Circuit's decision in *RLB Contracting*, on which the district court here relied.  In particular, the district court pointed to the Fifth Circuit's statement that § 30511(a)'s "statutory text does not foreclose the possibility of aggregate notice; it only requires the claimant to give 'the owner written notice,' not *a* written notice."  773 F.3d at 603.  To be clear, though, *RLB Contracting* was different—the court there sanctioned aggregating multiple notices from a *single* claimant pertaining to a *single* incident, not (as here) multiple notices from *multiple* claimants arising out of *multiple* incidents.  And while the Fifth Circuit was correct that the statute does not require *a* written notice, it does require "written notice of *a* claim."  46 U.S.C. § 30511(a) (emphasis added).  Even so, we needn't tarry on the aggregate-notice issue here, because, as we explain in text, even if we consider all nine of the original claimants' notices together, they don't reveal a reasonable possibility that the claims would exceed the value of Orion's four barges.

24

in drywall and around windows, ceilings, and fireplaces, and (3) leaks in their swimming pools and related water lines.  The most extensive—and arguably most serious—complaints came from Mary White.  After lodging a general complaint about damage in May 2012, she filed a more detailed grievance a year later. There, she said that her home had "sustained substantial damage from the work that is being done building the new Byway bridge."  In particular, she complained about "cracking in every room in [her] home (including around the windows and ceilings, and . . . along [her] marble fireplace)," "cracks in [her] new cement driveway," "dropped pavers in [her] patio," "a leak in [her] swimming pool," and "a wet spot in [her] downstairs room."  Six months thereafter, White followed up, alleging that she "had additional cracks in all [her] rooms."

Another homeowner, Robert Orsi, lodged a series of complaints, the most descriptive of which alleged damage to his "chimney and . . . front entrance," "cracks . . . above [his] door [that] made opening the door all the way difficult," and cracks "at the top of [his] stairs" that he feared suggested "issues with the concrete header over the doorway."  Another couple, Mark and Christine Dawson—the appellees here—repeatedly complained about "damage to [their] swimming pool"—in particular, about "damage to [the] lines to [the] swimming pool caused by pile driving vibration."  They also alleged, more vaguely, that "[i]n addition to the pool leaks," they had "a list of other issues that have happened, and

continue to happen." The other homeowners' complaints were similar, albeit less detailed—"leak in [my] pool," "cracking on [my] ceiling," "cracks in [my] home," "a lot of damage," etc.

As already noted, in response to several of the early complaints, Orion sent one of its agents to investigate. He determined that the alleged damage to White's home was "minor" and "cosmetic," that the cracks in Orsi's house were "old" and that the damage was "very minor cosmetic stuff," and that the Dawsons' pool leak was "just a crack in a PVC pipe." Orion installed vibration monitors at White's and Orsi's homes; the numbers registered "low" at Orsi's and "very, very low" at White's.

The question, then, is whether these notices revealed a reasonable possibility that the claims—in the aggregate, we have said we will assume—would exceed the barges' $1,258,217.00 value. We think it clear that they didn't. In explaining why not, it will be useful to compare this case with two recent Fifth Circuit decisions that have unpacked the reasonable-possibility standard. In *Eckstein*, a shipowner contended that a claimant's state-court complaint failed to reveal a reasonable possibility that his claim would exceed a vessel's $750,000 value. In disagreeing, the Fifth Circuit emphasized the seriousness of the claimant's physical injuries, sustained when he became "entangled in a line and was pulled into a mooring bit." 672 F.3d at 313. The claimant's injuries were not only gruesome—according to

26

eyewitness testimony, his "foot was hanging off of his leg at . . . a 90 degree angle" and there was "blood everywhere"—but also "permanent and catastrophic." *Id*. at 317–18. He required "multiple surgeries including debridement, the insertion of hardware to treat his bone fractures, and a skin graft." *Id*. at 318. In his complaint, he sought "compensation for the remainder of his lifetime, including past loss of earning, future loss of earning capacity, past and future disability, past and future disfigurement, past and future medical and hospital expenses, past and future pain and mental anguish, and maintenance and c[u]re." *Id*. at 317. The Fifth Circuit held that the claimant's complaint "alleging catastrophic and permanent injuries raised at least a reasonable possibility that his claim might exceed" the ship's $750,000 value and, accordingly, that "it was [the shipowner's] responsibility to conduct an investigation, and to file a limitation action within six months." *Id*. at 319.

The Fifth Circuit faced the reasonable-possibility issue again in *RLB Contracting*. In that case, a fishing boat carrying a family had collided with a ship's floating dredge pipe; "[a]ll occupants of the fishing boat were thrown overboard, suffering various physical injuries, and [a child] was killed." 773 F.3d at 599. Following *Eckstein*, the court held that a series of letters sent by the family's lawyer—including one emphasizing "the nature of the injuries, bystander claims, graphic photos, [and] the PTSD claims"—revealed a reasonable possibility

27

of a claim exceeding the vessel's $750,000 value. *Id*. at 600. Put simply, the Fifth Circuit concluded, the shipowner "should have realized that an action involving the death of a child would easily exceed $750,000 in potential damages." *Id*. at 606.

Needless to say, the nature and severity of the property damage alleged here pale in comparison to the claims for "permanent and catastrophic" personal injuries in *Eckstein* and wrongful death in *RLB Contracting*. And on the other side of the ledger, the value of the vessels here—more than $1.2 million—is significantly higher than in those cases. Even considering the notices provided by all nine of the original claimants, we hold that they failed to reveal a reasonable possibility of claims exceeding the value of Orion's four barges.

**b**

In concluding otherwise, the district court relied not on an empirical (or even anecdotal) valuation of the pre-November 11, 2014 claims—or a comparison of those claims with the acknowledged value of Orion's barges—but rather on twin determinations (1) that Orion had a duty to investigate both known and potential claims "immediately" upon receiving the homeowners' notices and (2) that it failed to do so. The key passage of the district court's opinion:

> Had Orion fulfilled its obligation to investigate immediately upon knowing of the claims and the uncertainty of their value or if it had simply filed its petition to limit liability in the face of this uncertainty, it would have either discovered that its losses were much greater than the specific claims about which it knew or it would have limited its liability in any event from all claims known or unknown occasioned

28

by the alleged injury caused by its pile-driving activity. Instead Orion did nothing, and that inaction is fatal to its Complaint to limit liability.

Doc. 634 at 23. In so concluding, the district court erred, both as a matter of law and as a matter of undisputed fact.

First, as to the law: The district court stated (and restated) that Orion had a legal duty to investigate known and potential property-damage claims "immediately" upon learning of them. For support, the court quoted the Fifth Circuit's decision in *RLB Contracting*, which in turn quoted that court's earlier decision in *Eckstein*:

> The purpose of the reasonable possibility standard is to place the burden of investigating potential claims on the vessel owner:
>
>> The Limitation Act provides generous statutory protection to the vessel owners who reap all of its benefits. When there is uncertainty as to whether a claim will exceed the vessel's value, the reasonable possibility standard places the risk and the burdens associated with that risk on the owner. In other words, if doubt exists as to the total amount of the claims or as to whether they will exceed the value of the ship the owner will not be excused from satisfying the statutory time bar since he may institute a limitation proceeding even when the total amount claimed is uncertain.

Doc. 634 at 20 (quoting *RLB Contracting*, 773 F.3d at 602 (quoting *Eckstein*, 672 F.3d at 317–18)) (additional internal quotation marks and citations omitted).

The district court, though, prematurely cut short its quotation from *RLB Contracting*. Just two sentences later—and again invoking its earlier decision in

29

*Eckstein*—the Fifth Circuit clearly explained when a shipowner's duty to investigate arises: "'*[O]nce a reasonable possibility has been raised*, it becomes the vessel owner's responsibility to initiate a prompt investigation and determine whether to file a limitation action.'" 773 F.3d at 603 (quoting *Eckstein*, 672 F.3d at 317) (emphasis added). *RLB* does *not* say—as the district court here phrased it—that the shipowner has an "obligation to investigate *immediately* upon knowing of the claims." And in fact, *Eckstein*, which *RLB* followed, flatly *rejects* the district court's investigate-immediately-upon-receipt position: "The Limitation Act's six-month timeline does *not* automatically begin to run when a vessel owner learns a claimant has filed a lawsuit. It is triggered *only* if and when the written notice reveals a 'reasonable possibility' that the claim will exceed the value of the vessel, and therefore that the vessel owner might benefit from the Limitation Act's protection." 672 F.3d at 317 (emphasis added).

We think that the Fifth Circuit has it exactly right. While we agree with the district court that a claimant's notice needn't include a specific demand for damages, and while it's true that the vessel owner bears the burden of "uncertainty" and "doubt" as to the amount of alleged damages, it remains the case that the claimant's notice must reveal a reasonable possibility that the claims may

30

exceed the offending vessel's value.  It is at that point—but not before—that the shipowner's duty to investigate arises.[7]

Because Orion's duty to investigate didn't arise "automatically" or "immediately" upon the filing of claims, it didn't violate that duty in the way the district court concluded.  Indeed, and to the contrary, because (for reasons already explained) the claimants' notices here didn't reveal a reasonable possibility of claims exceeding $1,258,217.00, Orion's duty to investigate never materialized—meaning, by definition, that it couldn't have violated that duty, as the district court held.

Now, briefly, as to the *facts*:  It simply isn't accurate, as the district court said, that "Orion did nothing."  Doc. 634 at 23.  As already explained, the undisputed facts demonstrate that, in response to the first several complaints, Orion sent one of its agents to investigate.  That agent visited the White, Orsi, and Dawson residences, observed the alleged damage, and conducted vibration monitoring.  He concluded that the problems were either "old," "minor," or "cosmetic"—or perhaps all three—and that the vibration measurements ranged

---

[7] And to be clear, the Fifth Circuit is hardly alone in concluding that a shipowner's duty to investigate does not arise "automatically" or "immediately," but rather only if and when a claimant's notice reveals a reasonable possibility of a claim that exceeds the vessel's value.  The Second and Seventh Circuits have said the same thing, *see McCarthy*, 83 F.3d at 829 ("*[T]he written notice* of claim must reveal a 'reasonable possibility' that the claim made is one subject to limitation." (emphasis added)); *Doxsee*, 13 F.3d at 554 ("Notice will be sufficient if *it* informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation." (emphasis added)).

31

from "low" to "very, very low." Thus, faced with claims of uncertain value—and even *without* concluding that the notices underlying those claims revealed the requisite "reasonable possibility"—Orion investigated and determined (in its opinion, with certainty) that the alleged damage was minor.

*  *  *

In sum, the notices that Orion had received prior to November 11, 2014 didn't reveal a reasonable possibility that the residents' claims would exceed the value of its four barges, and Orion's preliminary investigation confirmed that conclusion. Had Orion bulled ahead with a limitation action at that point—as the district court concluded the law required—it would have "serve[d] no purpose other than to clog the courts with [an] unneeded petition[]." *Morania Barge*, 690 F.2d at 34.

## IV

For the foregoing reasons, we hold as follows:

1.    The six-month filing deadline specified by 46 U.S.C. § 30511(a) is a non-jurisdictional claim-processing rule, and a shipowner's failure to meet it does not deprive the district court of subject matter jurisdiction but rather provides a basis on which to dismiss the owner's limitation action on the merits.

2.    In order to trigger § 30511(a)'s six-month filing period, a claimant (not someone else) must provide the shipowner or its agent (not someone else)

32

with a written (not oral) notice that reveals a "reasonable possibility" of a claim that will exceed the value of the vessel(s) at issue.

3.    A shipowner's duty to investigate known or potential claims does not arise immediately upon receipt of a claimant's notice, but only if the notice reveals a reasonable possibility that the underlying claim exceeds the value of the vessel(s).

4.    The notices provided by the first nine claimants here—*i.e.*, those who lodged complaints before November 11, 2014—failed to reveal the required reasonable possibility, and thus neither started the six-month clock nor obligated Orion to investigate.

**REVERSED AND REMANDED.**